In the Matter of the Estate of LEONID TONKONOGOFF, Deceased.

Surrogate's Court, New York County, December 17, 1941.

*White & Case* [*Chester Bordeau* and *Peter P. Blanchard, Jr.*, of counsel], for the petitioner.

*Milton Levin*, for the respondent.

*Frederick W. McGowan*, for the National Surety Corporation.

FOLEY, S. The ancillary administrator has accounted for his transactions in the pending proceeding and seeks a judicial settlement.

The questions presented for determination in this decision were raised by objections filed to the account by Michael Kosolapoff, an alleged creditor of the estate whose claim was rejected by the ancillary administrator. The claim had been the subject of an action brought by Kosolapoff against the representative of the estate in the Supreme Court, New York County. By the requisite formal orders that action was transferred from the Supreme Court to this court and was consolidated with the pending accounting proceeding.

The claim is extraordinary in character and even sinister in many of its phases. It is based upon an instrument alleged to have been signed by the decedent in Vladivostok, Siberia, on November 23, 1919, in which it is asserted he promised to pay the sum of $175,000 to the claimant Kosolapoff in London, England. It is exceptional that the instrument fixed not a specific date for payment, but set forth that the moneys were to be paid, " not later than the year of 1930." The total recovery demanded here with interest for twenty-two years aggregates the sum of approximately $413,000. It was further stated in it that as a guaranty for the indicated sum, the promisee was given a mortgage on the properties of the decedent Tonkonogoff, then in London, consisting of goods and immovables belonging to the decedent. The assets in the ancillary jurisdiction here aggregate approximately $370,000. The

amount of decedent's estate in England has not been disclosed. There is another extraordinary circumstance. The original instrument claimed to have been signed by the decedent has not been produced. Reliance is placed by the claimant upon an alleged photostat of it. The original, it is asserted by him, may be in Russia, or somewhere in Asia. The claimant contends that the instrument was based upon a sale of furs between himself and the decedent. The representative of the estate, on the other hand, vigorously asserts that the photostatic copy of the instrument was fabricated and the original never existed. He also contends that the claim was purposely delayed and asserted for the first time over one year after the death of the decedent and that it was designed to interfere with the distribution of the assets in this, the ancillary jurisdiction, in order to enforce an unjustified settlement.

However, we are not presently concerned with the truth or falsity of these general contentions of the opposing parties or the actual facts surrounding the execution of the instrument or whether it is a forgery because of the necessity of disposing of preliminary issues which go to the defeat of the claim. A determination of the claim upon its merits would not be presently possible because of the alleged necessity of issuing letters rogatory on behalf of claimant to courts in Warsaw, Poland, and Shanghai, China. It is apparent that the issuance of letters rogatory to these war-ridden cities would result in a long period of delay in the settlement of this estate. If the affirmative defenses bar this claim irrespective of whether it is a genuine and honest one, the account of the ancillary administrator can be judicially settled at once.

At the time of the transfer of the action there was pending in the Supreme Court a motion brought by the plaintiff to strike out the affirmative defenses contained in the answer upon the ground that they failed to state facts sufficient in law to constitute defenses and upon the further ground that they were sham, frivolous and tended to delay the trial of the action. That motion was also transferred by the Supreme Court for decision by the surrogate. The trial and determination of the sufficiency of the Statute of Limitations was thereupon directed by the surrogate and with it there was set for hearing the motion above referred to directed to the sufficiency of the affirmative defenses. The scope of the hearing was enlarged after amendments made to the answer so as to include the question as to whether the instrument was invalid upon its face as a matter of law. Otherwise stated the surrogate was required to determine the sufficiency of two of the affirmative defenses raised by the representative of the estate.

(1) That regardless of its authenticity, the instrument was void in its inception and in its form under the pertinent law of Russia at the time of its alleged execution because it failed to recite the consideration for the promise of payment.

(2) Even if the instrument was authentic and valid in its inception under the law of Russia that a recovery was barred because of the failure of the claimant to commence an action or to serve proof of claim upon the representative of the estate within ten years after the right to sue accrued. Upon the latter question the estate argues that the ten-year statute of Russia was a prescriptive period; that it was made an inherent part of the original agreement; that it was a matter of right and substance; that it was a condition precedent to the maintenance of an action upon the instrument; that the New York Statute of Limitations has no application here and, finally, that at the expiration of the period when no suit has been brought, the agreement or promise was forever extinguished and all rights under it lost to the alleged promisee.

The claimant, on the other hand, contends that the statutes of Russia were procedural only and affected the remedy and not the right; that the time prescribed within which action must be commenced was a mere limitation similar to our Statute of Limitations; that the law applicable is that of the State of New York because the claimant was a resident of our State at the time of the accrual; that sections 13, 19 and 55 of the Civil Practice Act apply and, finally, that the proof of claim was served within the time required because our Statute of Limitations was tolled by the absence of the decedent from this State.

It is undisputed that both claimant and decedent were residents of Vladivostok at the date of the alleged instrument and were members of a class of Russians which, before and at the time of the Revolution in 1917, were described as anti-Soviet. Both were in Vladivostok in 1919. Within two or three years after that the decedent moved to London where he resided from approximately 1922 until the date of his death on October 18, 1939. The claimant also left Vladivostok about the year 1922. He appears to have spent some time thereafter in China. He lived in London over a period between 1922 and 1924. In the latter year he came to New York where he has lived ever since. It is undisputed that the decedent never lived in New York.

Extensive testimony was submitted to the surrogate upon the two questions. It involved principally the presentation by the opposing parties of the opinions of experts who were former Russian lawyers as to the pre-Soviet law as it existed at the time of the alleged execution of the instrument on November 23, 1919. These opinions

were based upon the contemporaneous statutes of Russia and the decisions of its highest court, the Ruling Senate. The statutes and decisions, together with translations, were received in evidence. All of the statutes and cases involved are those of the Russian Empire and both sides concede that the law of the Soviet regime does not apply.

Upon the first question we are required to apply the general principle that all matters bearing upon the execution, the interpretation and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made. (*Swift & Co.* v. *Bankers Trust Co.*, 280 N. Y. 135; *Union National Bank* v. *Chapman*, 169 id. 538, 543.) That principle is further amplified that as " a general rule, the validity of a contract is determined by the law of the jurisdiction where made, and if legal there is generally enforcible anywhere." (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 414.) It follows as a necessary corollary that if the agreement is void in the place of its inception, it is unenforcible in any other jurisdiction.

*First.* The surrogate holds that the instrument here involved (even if authentic) was void in its inception under the law of Russia in force at the time of its alleged execution because there was omitted from it the indispensable requisite of the recital of the consideration for the promise of payment. Under the Russian statutes the instrument is known as a " Domestic Loan Letter." (Russian Imperial Code of Civil Laws, § 2036.) It is undisputed that it is not a promissory note. Under section 2014 of that Code it is declared that the loan shall be considered null and void if, after the court's examination, it will be found that the loan is " moneyless," that is, without consideration. The instrument here contains no recital as to whether moneys were advanced or loaned by the promisee to the promisor or that goods were sold as a basis for the promise. It is entirely silent as to any consideration whatsoever. The experts for the estate have cited upon this phase, decisions of the highest court of Russia that the instrument was void in its form. An examination of these decisions shows that they clearly support the opinions expressed by these witnesses. (*Petrovsky* v. *Ardi*, Decisions of the Russian Ruling Senate, No. 647 of the year 1872; *Kropotoff* v. *Krougloff*, No. 415 of the year 1875.) These opinions are, therefore, accepted by the surrogate as controlling. The contrary opinions and conclusions of the expert for the claimant are rejected since the decisions cited by him are in no way applicable or even relevant to the form of the instrument here involved.

In the interpretation of the statutes relating to " Domestic Loan Letters," the highest court of Russia has held that they

required that the instrument must set forth two essential and indispensable elements. (1) An admission of the consideration or value received. (2) The promise to pay. (Russian Imperial Code of Civil Laws, §§ 2012, 2014, 2036, 2045.) It was decided in these cases that where the consideration is omitted, it cannot be presumed or supplied or proved by the claimant by his own oral explanation or by the testimony of witnesses. The omission of the essential recital of value received or consideration made the instrument void in its inception and unenforcible in any jurisdiction — domestic or foreign.

*Second.* Without indication of the slightest doubt as to the conclusion just reached upon the first question, the surrogate also holds that even if the instrument was authentic and valid, a recovery was barred because of the fact that the proof of claim was served upon the representative of the estate more than ten years after the date when any right of action accrued. Under the language of the instrument, payment was required to be made before the end of the year 1930. The ten-year period, therefore, expired on December 31, 1940. The proof of claim was served upon the legal representative of the estate in New York on January 13, 1941. By the law of our State, the service of such proof is equivalent to the commencement of an action and if it has been done before the expiration of the period of limitation, the statute is tolled. (*Matter of Schorer*, 272 N. Y. 247.) While it is thus unimportant, it may be stated that the action in the Supreme Court was begun by the claimant five months later on June 18, 1941.

The representative of the estate here urges that the circumstances justify the application of the rule that where the statute of the foreign country or State " extinguishes the right itself, it may be set up as a bar to an action thereon wherever brought." (1 Wood on Limitations [4th ed.], p. 33.) Differently phrased, but of similar import, " if by the law of the State which has created a right of action, it is made a condition of the right that it shall expire after a certain period of limitation has elapsed, no action begun after the period has elapsed can be maintained in any State." (Restatement, Conflict of Laws, § 605.)

That rule was recognized and applied by the Supreme Court in *Davis* v. *Mills* (194 U. S. 451). The question presented was whether a defendant in an action in the court of another State could avail himself of the Montana Statute of Limitations based upon a statute imposing liability on trustees for the debts of a corporation. The Montana statute was held to be a bar to recovery. Justice HOLMES wrote: " The general theory on which an action is maintained upon a cause which accrued in another jurisdiction is that the liability

is an *obligatio*, which, having been attached to the person by the law then having that person within its power, will be treated by other countries as accompanying the person when brought before their courts. But, as the source of the obligation is the foreign law, the defendant, generally speaking, is entitled to the benefit of whatever conditions and limitations the foreign law creates. *Slater* v. *Mexican National Railroad*, 194 U. S. 120. It is true that this general proposition is qualified by the fact that the ordinary limitations of actions are treated as laws of procedure and as belonging to the *lex fori*, as affecting the remedy only and not the right. But in cases where it has been possible to escape from that qualification by a reasonable distinction courts have been willing to treat limitations of time as standing like other limitations and cutting down the defendant's liability wherever he is sued. The common case is where a statute creates a new liability and in the same section or in the same act limits the time within which it can be enforced, whether using words of condition or not. *The Harrisburg*, 119 U. S. 199. But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right."

This rule has been followed without deviation in the courts of our State in decisions hereinafter discussed. (*Schwertfeger* v. *Scandinavian American Line*, 226 N. Y. 696, affg., on the opinion of SHEARN, J., below, 186 App. Div. 89; *Stumpf* v. *Hallahan*, 101 id. 383; affd., 185 N. Y. 550; *Hutchinson* v. *Ward*, 192 id. 375; *Wollen* v. *David, Inc.*, 247 App. Div 113; *McGough* v. *Derby*, 254 id. 708; *Apfelberg* v. *Lax*, 255 N. Y. 377; *Robinson* v. *Stratman*, 141 Misc. 393.)

It has been shown indisputably by the opinions of the experts for the estate that the Statutes of Limitations of Russia, as construed by its highest court, are part of the substantive right and an integral part of the remedy. They are not procedural in nature. They go to the essence of the right to maintain the action. They create distinctively a prescriptive period. The duty to sue within the ten-year period becomes a material and indispensable part of the agreement. Upon the expiration of the period the release of the promisor is recognized as a property right which accrues to him. They go to the existence and annulment of the right and not to the remedy. (*Gireisky* v. *Wilkens*, Decisions of the Russian

Ruling Senate, Case No. 47 of the year 1867; *Schultz* v. *Rappo*, Case No. 357 of the year 1868; *Matter of Kouznezova*, Case No. 195 of the year 1880.) The absence from the country of the promisor does not toll the prescriptive period. (*Talalaeva* v. *Khoudakova*, Case No. 84 of the year 1912; *Schultz* v. *Rappo*, Case No. 357 of the year 1868; Case No. 179 of the year 1879 — names of parties not given in exhibit.) Not even the death of the promisor interrupts the running of the period.

The pertinent Statutes of Limitations are found in sections 694 and 1549 of the Russian Imperial Code of Civil Laws. The translation of these sections, as given by the experts, is as follows: Section 694 reads: " Actions, just as litigation, are limited by general ten years prescription. One who in the course of this time (prescription) does not start the action or, after having started did not undertake any further steps in the courts, connected with this action, loses his right." Section 1549 reads: " A contract shall be terminated in the event that the ten years prescription period has elapsed after the term which was designated for its final act, and no law suit had been brought upon such contract (a) or such case has not been prosecuted within ten years from the commencement of the suit. * * *." It was proved by the experts for the estate that under section 1549 just quoted, the word " terminated," as used in the opening sentence —" A contract shall be terminated in the event that the ten years prescription period has elapsed "— is the equivalent of extinguished or killed or ceased to exist. Stress was also laid by the experts upon the latter part of section 694 that one who has neglected to start the action within the prescriptive period of ten years " *loses his right.*" (Italics mine.)

The exposition of these principles of Russian law given by the experts for the ancillary administrator is strongly fortified by the pronouncements of the Russian Ruling Senate. Thus, in *Matter of Kouznezova* (Case No. 195 of the year 1880) the highest court stated: " The laws on prescription, however, are not procedural rules as according to the place which they have in the collection of laws, so also in accordance to their significance, as a method of *acquiring and discontinuing rights, laws on prescription are rules of material or substantive law* and, therefore, in regard to the action in time they are subjected to the general rule established in Section 60 of the Fundamental Law as soon as some right accrued the size and limits of this right, as well as the possibility of their realization of this right in the course of the term of prescription by action, must be considered in accordance with the law which acted in the moment when the right accrued."

Again in *Gireisky* v. *Wilkens* (Case No. 47 of the year 1867) the Ruling Senate said: " There is a positive rule in the laws on that subject (Sec. 1549, Vol. X of the Code of Laws, Part 1) by force of which a contract terminates as soon as the ten years' prescription period runs out from the date fixed for its final performance and no action started. It is the meaning of said law that if one of the parties to the contract of loan, the creditor, does not assert his right for the return of the capital designated in the loan instrument within a period of ten years from the day of payment therein provided, *he loses that right* and the other party *eo-ipso* is *released* from payment of the borrowed money and *becomes a full owner thereof*." (Italics mine.)

The courts of New York are bound by the interpretation placed upon the foreign statutes by the highest court of the foreign State or country. (*Schwertfeger* v. *Scandinavian American Line, supra; Jessup* v. *Carnegie*, 80 N. Y. 441, 450.)

It would be difficult to conceive of any law which more drastically extinguished the right of action at the expiration of the period than these Russian statutes. They became a part of the terms of the original agreement " as if they had been set forth in its stipulations in the very words of the law * * *." (*McCracken* v. *Hayward*, 2 How. [43 U. S.] 608, 613.) They prohibit a recovery upon the claim in any jurisdiction.

The cases in our State, cited above, have uniformly applied the rule that where the statute of the foreign State or country is a condition precedent to the maintenance of the action, or affects the cause of action and not the remedy, or extinguishes the right, any action in our State courts is barred at the expiration of the foreign statutory period. Under these decisions our own Statute of Limitations has no application.

In *Stumpf* v. *Hallahan* (101 App. Div. 383; affd., 185 N. Y. 550) the action was based upon a bond, to recover for a deficiency arising from the foreclosure of a mortgage on land in New Jersey " given to secure the bond." The New Jersey statute, among other things, provided that in all cases where a bond and mortgage were given for the same indebtedness, the proceedings to collect the debt shall be: *First*, to foreclose the mortgage, but no deficiency judgment can be obtained in the foreclosure action; *second*, if the property does not sell for enough to satisfy the debt, interest and costs, an action may be brought on the bond for the deficiency within six months after the sale; *third*, if the mortgagee recovers a judgment for the deficiency in an action on the bond, the foreclosure is opened and the mortgagor may redeem within six months after the entry of judgment. The plaintiff had waited almost three years after the

foreclosure before bringing an action upon the bond. The justice who tried the case decided that the short New Jersey Statute of Limitations was binding and a bar to the maintenance of the action. The Appellate Division, First Department, in an opinion by Justice O'Brien, affirmed the court below. It held that the New Jersey Statute of Limitations was applicable, and since the action was not brought within six months it was barred.

In *Hutchinson* v. *Ward* (192 N. Y. 375) the Court of Appeals restated the rule applied in *Stumpf* v. *Hallahan* (*supra*). Judge Gray wrote: " I am unable to agree with the Appellate Division's view of the operation of the New Jersey statutes, as then expressed. It would seem that that court and, indeed, this court were committed to the view that such an action is maintainable upon the bond; subject to the provisions of the New Jersey statute, as read into the contract. In *Stumpf* v. *Hallahan* (101 App. Div. 383), which was affirmed by this court, but without opinion (185 N. Y. 550), the action was similar in its nature to the present one. What was decided in that case was that the laws of the State of New Jersey governed and that, as the action was not brought within the six months after the sale in foreclosure, the action could not be maintained." The court proceeded to state that these two questions were settled, of course; but it was also settled, necessarily, that nothing forbade the bringing of an action upon the bond within the State of New York " if the cause of action had not been destroyed."

In *Wollen* v. *David, Inc.* (247 App. Div. 113), the First Department again recognized the short Statute of Limitations of New Jersey which provided for the bringing of an action on the bond within three months from the date of the confirmation of the sale in foreclosure. The process in the action to recover the deficiency was served three months and two days from that date. Justice Glennon, writing for the court, said: " It cannot be questioned that if this action would have been barred in the State of New Jersey it must also be barred here. (Civ. Prac. Act, § 13; *Stumpf* v. *Hallahan*, 101 App. Div. 383; affd., 185 N. Y. 550; *Hutchinson* v. *Ward*, 192 id. 375.) " Under the New Jersey statute in question, absence from the State did not stop the running of the statute. The action was held to be barred.

In *McGough* v. *Derby* (254 App. Div. 708) the Second Department applied a similar rule in an action to recover the deficiency on a bond after the foreclosure of a mortgage on New Jersey real estate. The parties were residents of our State and the bond was executed here and delivered here. The court in its memorandum decision stated: " The contemporaneous delivery and acceptance of a

mortgage to secure the bond covering property in the State of New Jersey, however, imports an intention that the laws of that State should govern the right of action on the bond and mortgage if there be submission to its jurisdiction. The bond and mortgage constitute one contract and are to be considered together. * * * Under such circumstances, the New Jersey Statute of Limitation inhered in the entire cause of action and is applicable to the present action, commenced here, and plaintiff cannot be heard to contend that, irrespective of her submission to the jurisdiction of that State, her action on the bond is independent thereof."

In *Apfelberg* v. *Lax* (*supra*), in the same kind of an action involving the liability upon a New Jersey bond and mortgage, the court held that if the action had not been commenced within the six months' statute of New Jersey it could not be maintained and cited the rule from *Hutchinson* v. *Ward* (*supra*) that the New Jersey statute affected the cause of action and not the remedy.

In *Schwertfeger* v. *Scandinavian American Line* (*supra*) the question under consideration was whether a cause of action to recover damages for death resulting through wrongful act was extinguished by the expiration of the Statute of Limitations in New Jersey which provided for a two-year period. The accident occurred in that State. The action was brought after the expiration of the two-year period. It was claimed by the plaintiff that the running of the statute was suspended by certain payments made for workmen's compensation under the New Jersey Compensation Act. The action was held to have been barred. Justice SHEARN pointed out the difference between the construction placed upon the statute by the courts of New Jersey as compared with the construction of our own Statute of Limitations. In our State he showed that the limitation is not of the essence of the right to maintain the suit. (Citing *Sharrow* v. *Inland Lines, Ltd.*, 214 N. Y. 101.) On the contrary, in New Jersey it was the settled law under the decisions of the highest courts of that State " that the two-year period within which an action is required to be brought * * * is not a period of limitation, but is an integral part of the remedy and a condition precedent to the maintenance of an action under that statute." He stated further the rule which is directly pertinent to the facts in the pending proceeding here that " it is contrary to the principles of law established in this country that the Legislature of one State may in any way enlarge a right conferred by the statute of another State." The complaint in the action was dismissed because of the bar of the foreign statute and the determination of the Appellate Division was affirmed by the Court of Appeals upon the opinion of Justice SHEARN below.

Finally, in *Robinson* v. *Stratman* (141 Misc. 393), the action was based upon a promissory note given in the State of Florida and secured by a mortgage on real estate there. The defendant pleaded that under the law of Florida the action may not be brought upon the note until after the mortgage has been foreclosed and a deficiency judgment exists. The defense was held sufficient in law if proven. Justice HARRIS stated: " This court is of the opinion that the question raised by the second defense as to the law of Florida in reference to such notes is a defense that goes to the validity, force and effect of the note, and that, therefore, the rights of the parties should be determined by the *lex loci contractus* (*Stumpf* v. *Hallahan*, 101 App. Div. 383; affd., 185 N. Y. 550; *Hutchinson* v. *Ward*, 192 N. Y. 375), and that such defense, if proven, is sufficient in law."

When this line of authorities is applied to the prior finding of the surrogate, that the Statute of Limitations or prescriptive period of Russia goes to the right and not to the remedy and extinguishes the cause of action by the expiration of the ten-year period, the failure of the claimant here to initiate an appropriate action or proceeding or serve his proof of claim within the ten-year period barred his right of recovery in this State.

It has been asserted by the claimant that the Statute of Limitations of England, which was designated in the instrument as the place of payment of the obligation, saves his right to recover. In this connection I accept the testimony of the expert on English law who testified for the estate, that the statutes of England are ineffective to extend the Russian ten-year period of extinguishment. Moreover, under the law of Russia the law of the place of the making of the contract, and not the law of the place of performance, applies. (*Ehrlich* v. *Firkel*, Case No. 57 of the year 1906.) In this respect this law is similar to the conslusion reached by our Court of Appeals in *Swift & Co.* v. *Bankers Trust Co.* (*supra*).

The surrogate specifically holds for the reasons above stated that our own Statute of Limitations, and particularly sections 13, 19 and 55 of the Civil Practice Act, have no application since the right of action was utterly extinguished. If this question had been left open, the surrogate is required to hold that the claimant was not a *bona fide* resident of the State of New York at any time from his arrival here. The record abounds with his declarations, many of them under oath, which destroy his pretensions on this aspect of the case that he ever acquired a valid residence in the State of New York.

Finally, in explanation of the postponement of the service of the proof of claim until January 13, 1941, the claimant contends

that his proceeding was initiated in timely fashion because the instrument was dated under the old orthodox calendar and not under the new Gregorian calendar. The adoption in Vladivostok of the modern system of dates occurred before the instrument was alleged to have been executed on November 23, 1919. It has been conclusively shown that business transactions and public affairs in Vladivostok were conducted under the new calendar in which the dates harmonize with our own calendar. The ten-year statute expired on December 31, 1940, under that system. The service of the proof of claim thirteen days later was, therefore, an abortive and futile attempt to revive the alleged debt. The failure of the claimant to assert his rights by timely action is of particular significance because of his litigious disposition. In cases, some of which have found their way into the official reports, at least a few of them show his acquaintance with the Statutes of Limitations, domestic and foreign. (*Kosolapov* v. *Russo-Asiatic Bank*, 144 Misc. 499; revd., 238 App. Div. 791; 240 id. 731; 47 F. [2d] 917; *Kosolapoff* v. *Petrogradsky Mejdunarodny Kommerchesky Bank*, 276 N. Y. 499, affg. 248 App. Div. 864.)

The action is dismissed and the claim disallowed upon the merits. The objections filed to the account by the claimant are overruled.

Submit decree on notice settling the account accordingly.