Florence M. CLARKE, Plaintiff-Appellant,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellee.

No. 244, Docket 26157.

United States Court of Appeals Second Circuit.

Submitted Dec. 1, 1964.

Decided Feb. 5, 1965.

---

Joseph Dean Edwards, New York City (John J. Tomich, New York City, William J. Troy, Seaford, N. Y., John R. Weigel, Newark, N. J., on the brief), for plaintiff-appellant.

Conboy, Hewitt, O'Brien & Boardman, New York City (Thomas V. McMahon, Lawrence W. Middleton, New York City, of counsel), for defendant-appellee.

Before FRIENDLY and SMITH, Circuit Judges, and BLUMENFELD, District Judge.*

FRIENDLY, Circuit Judge:

More than ten years after plaintiff's alleged injury by the defendant railroad and seven years after her suit was brought, the one question passed on and now here for review is whether her action was begun eight months too late. We think it was not.

Plaintiff, a New York resident, boarded a Pennsylvania Railroad train in New Brunswick, N. J. for transportation to New York City on September 27, 1954. The injury she allegedly suffered from defendant's negligence took place near Rahway, N. J. She brought suit in the Supreme Court of New York for Kings County on May 22, 1957, within the three year period for actions for personal injury resulting from negligence then provided by § 49, subd. 6 of the N. Y. Civil Practice Act; the Railroad removed to the District Court for the Eastern District of New York by virtue of its Pennsylvania citizenship. There it moved to dismiss on the basis of the first sentence of § 58 of the Railroad Law of New Jersey, codified as N.J.Rev.Stat. tit. 48, § 12–151 (1937), which we quote in the margin.[1] The district judge granted the motion.

Two other New York statutes then in effect are relevant. Section 13 of the N. Y. Civil Practice Act, carried forward in substance as § 202 of the CPLR, provided:

"13. *Limitation where cause of action arises outside of the state.* Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, for bringing an action upon the cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply. * * *"

And § 55, which finds no exact counterpart in the CPLR, recited that:

"§ 55. Action against nonresident; same limitation as against

---

* Sitting by designation.

1. 48:12–151. *"Limitation of actions; injuries to persons; death; injuries to property by fire.*

"All actions accruing from injuries to persons caused by the wrongful act, neglect or default of any railroad company owning or operating any railroad within this state, shall be commenced and sued within two years next after the cause of action accrued, and not after. Actions by an executor or administrator for injuries causing the death of the testator or intestate shall be commenced and sued within two years next after the death, and not after. All actions for injury done to any property by fire communicated by an engine of any railroad company or any railroad within this state shall be commenced and sued within two years after the cause of action accrued, and not after."

resident. Except as provided in section thirteen of this act an action upon any cause of action may be brought in a court of this state within the time limited therefor by the laws of this state, and may not be brought thereafter, and the time limited for bringing a like action by the laws of the place of residence of the person against whom the cause of action arose or by the laws of the place where the cause of action arose, shall not apply."

Anyone reading the "except" clause of § 13 and the final clause of § 55 without the burden of legal knowledge would wonder how New York's legislature could have said more clearly that Mrs. Clarke had three years within which to sue the Railroad in New York even though New Jersey would have dismissed her action unless brought within two. But the issue is not that simple. Story's famous principle that limitations are a procedural matter determined by the *lex fori,* see Le Roy v. Crowninshield, 15 Fed.Cas. 362 (No. 8,269) (C.C.Mass.1820); Commentaries on the Conflict of Laws § 576 (8 ed. Bigelow 1883), evoked opposition both from adherents of the *obligatio* theory, such as Mr. Justice Holmes, Davis v. Mills, 194 U.S. 451, 454, 24 S. Ct. 692, 48 L.Ed. 1067 (1904), and Professor Beale, 3 Conflict of Laws § 604.1 (1935), and from its foes, see Lorenzen, The Statute of Limitations and the Conflict of Laws, 28 Yale L.J. 492 (1919). One of the most effective tools of the opposition was the doctrine "that where the foreign statute of limitations is regarded as barring the foreign right sued upon, and not merely the remedy, it will be treated as conditioning that right and will be enforced" by the forum "as part of the foreign 'substantive' law." Bournias v. Atlantic Maritime Co., 220 F.2d 152, 155 (2 Cir. 1955). Proceeding from the sound premise that the New York courts have applied this doctrine to the apparently unequivocal New York statutes we have quoted, see Surrogate Foley's opinion in In re Tonkonogoff's Estate, 177 Misc. 1015, 32 N.Y.S.2d 661

(1941), citing many cases, the Railroad persuaded the district judge that the first sentence of § 58 of the New Jersey Railroad Law was a statute of just that sort.

At first blush the conclusion seems quite surprising. Mrs. Clarke's claim was not one founded on statute—the type of claim as to which the "substantive" theory of limitation has generally, if not exclusively, been applied, see Davis v. Mills, supra, 194 U.S. at 454, 24 S.Ct. 692 (1904). It was a garden-variety tort claim recognized, long before New Jersey existed, by the common law of England, which the New Jersey Constitution of 1776 adopted (Art. XXII). The surprise becomes greater when we note that the two year period of § 58 of the New Jersey Railroad Law is the same as that in New Jersey's general statute "for an injury to the person caused by the wrongful act, neglect or default," N.J.Rev.Stat. tit. 2A, § 14–2 (1951). But the Railroad argues that the second sentence of § 58, dealing with wrongful death actions against railroads, is a limitation on the right, Eldridge v. Philadelphia & Reading R.R., 83 N.J.L. 463, 85 A. 179 (Ct. Err. & App. 1912), and that the third sentence, relating to fire damage, has been held by New York to be such, Gatti Paper Stock Corp. v. Erie R.R., 247 App. Div. 45, 286 N.Y.S. 669, aff'd, 272 N.Y. 535, 4 N.E.2d 724 (1936), and that under these circumstances it would be strange not to regard the first sentence as likewise "substantive." This is supplemented by the point that New Jersey does not apply the tolling provisions of its general statute of limitations even to the ordinary tort liability dealt with in the first sentence of § 58, Grabert v. Central R.R. of N. J., 91 N.J.L. 604, 103 A. 212 (Ct. Err. & App. 1918).

The argument does not persuade us. Nothing follows from the "substantive" nature of the two year period for bringing wrongful death actions against railroads. As shown by decisions cited in the Eldridge opinion, New Jersey takes the same view as to its Death Act generally, see Schwertfeger v. Scandinavian Am. Line, 186 App.Div. 89, 174 N.Y.S.

147, aff'd, 226 N.Y. 696, 123 N.E. 888 (1919); indeed, in a sense the Eldridge case argues against the Railroad's contention that New Jersey considers claims against railroads to be something separate and apart, since the New Jersey Court of Errors and Appeals there held that the one year period for death actions then prescribed in § 58 was superseded by the two year provision in the general Death Act of 1907. The Gatti case dealt only with what the court considered a statutory cause of action created by §§ 56 and 57 of the Railroad Law; no similar claim of termination of the foreign created right was made by the defendant with respect to a common law cause of action for negligence that had also been pleaded. Moreover, there is greater reason for regarding the third sentence of § 58 as substantive since it is limited to fires in New Jersey, see Christy v. New York Central & H. R. R.R., 90 N.J.L. 540, 101 A. 372 (Ct. Err. & App. 1917), whereas the first sentence applies to actions against New Jersey railroads wherever the injury. New Jersey's choice not to apply its tolling provisions to personal injury actions against railroads is of little significance, especially when the pertinent ruling of the New Jersey court characterized the provision as "a special statute of limitation." Grabert v. Central R.R. of N. J., supra, 91 N.J.L. at 605, 103 A. at 212.

If the Railroad's case were stronger than it is, we should have to consider whether recent New York decisions such as Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E. 2d 526 (1961), and Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), tending to reject the *obligatio* theory as to extra-New York torts to New York residents in favor of a concept that the forum "creates" the cause of action, drawing on foreign law to such extent as it deems appropriate, may not lead the Court of Appeals in the future to a more expansive reading of the exception clause of CPLR § 202. But we are clear

that, even prior to those decisions, New York courts would not have considered that the first sentence of § 58 of the New Jersey Railroad Law constituted such a "built-in" limitation on a common law tort claim as to deprive Mrs. Clarke of the three year period for bringing an action against the Pennsylvania Railroad in New York which she would have had if injured there. See Ehrenzweig, Conflict of Laws 431–33 (1962).

Reversed.