**BANK OF BOSTON INTERNATIONAL OF MIAMI, Plaintiff,**

v.

**Roberto ARGUELLO TEFEL and Matilde Osorio de Arguello, Defendants.**

No. 84 Civ. 1023.

United States District Court, E.D. New York.

Jan. 17, 1986.

isdiction over defendants under New Jersey's long-arm statute.

Kelley Drye & Warren, New York City, for plaintiff.

Buckley, Kremer, O'Reilly, Pieper, Hoban & Marsh, Mineola, N.Y., for defendants.

**MEMORANDUM AND ORDER**

GLASSER, District Judge:

Plaintiff Bank of Boston International of Miami ("BBIM")[1] brought this action against defendants Roberto Arguello Tefel and Matilde Osorio de Arguello to collect on a promissory note allegedly made by Roberto Arguello and a loan agreement executed by both defendants. Defendants have moved for an order dismissing the action on the ground that it is time-barred, or through the operation of the doctrine of *forum non conveniens*. For the reasons set forth below, defendants' motion will be denied.

## I. *Statute of Limitations*

There is no significant dispute as to the facts underlying this portion of defendants' motion. BBIM alleges that defendants defaulted on their obligations "by failing to make the full principal payment that was due on January 15, 1979 and have defaulted on all payments due" since that date. Amended Complaint at ¶ 23. The complaint in this action was filed on March 9, 1984, more than five years later. The only task, therefore, is to determine what statute of limitations applies to this action.

The first step in this determination is to observe that subject matter jurisdiction in this case is based on diversity of citizenship. As such, this court must apply the statute of limitations that would be applied by the state in which it sits. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Next, it should be noted that "under New York law the statute of limitations is considered procedural ... and New York will apply its own statute of limitations even though the injury which gave rise to the action occurs in another state." *Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981), *citing Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 588, 403

---

**1.** By Memorandum and Order dated October 9, 1984, I granted the motion of Bank of Boston Trust Company (Bahamas), Ltd., which commenced this action, to substitute BBIM as party plaintiff.

N.Y.S.2d 185, 187, 374 N.E.2d 97, 99 (1978).[2] Because of this aspect of New York law, the court need not, at this time, determine what law will ultimately govern the merits of this action. Thus, defendants' argument that a grouping of contacts test would lead to the choice of Nicaraguan law is simply irrelevant to the issue at hand. By the same token, it is unnecessary to consider plaintiff's contention that a choice of law provision in the promissory note that refers to Massachusetts law will govern. *See Sears, Roebuck & Co. v. Enco Associates, Inc.,* 43 N.Y.2d 389, 397, 401 N.Y.S.2d 767, 772, 372 N.E.2d 555, 559 (1977) ("The contract provision that the agreement was to be governed by Michigan law operated only to import the substantive law of Michigan.").

There is no question that with regard to New York's six-year statute of limitations for contract actions, N.Y.C.P.L.R. § 213 (McKinney's 1972 & Supp.1984-1985), this action is timely. However, because of New York's "borrowing statute," N.Y.C.P.L.R. § 202 (McKinney's 1972), our inquiry does not end there. That statute provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state

> the time limited by the laws of the state shall apply.

Because it is agreed that this action did not accrue in New York, and because neither BBIM nor Bank of Boston Trust Company (Bahamas), Ltd., in whose favor the action originally accrued, *see* note 1 *supra,* is not a resident of New York, *see United States Fidelity & Guaranty Co. v. E.W. Smith Co.,* 46 N.Y.2d 498, 414 N.Y.S.2d 672, 387 N.E.2d 604 (1979), it must be decided whether this action is barred by the "state where the cause of action accrued."

In determining where a cause of action accrues for the purpose of the borrowing statute, it has been said that "[t]he New York Court of Appeals has furnished little guidance." *In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 801 (E.D.N.Y.1984). Nevertheless, decisions of lower New York courts and of our own Court of Appeals provide some assistance. Preliminarily, it must be noted that defendants' attempt to invoke modern choice of law doctrine, by incorporating that doctrine into the borrowing statute, is once again unavailing:

> Although some lower courts—apparently motivated by the conviction that the "grouping of contacts" approach consistently provides far more rational results than the old "place of injury" rule—have hypothesized that New York's highest court would apply the "modern" conflict of laws analysis to the borrowing stat-

---

**2.** In their reply brief, defendants rely heavily on an alternative holding in *In re Tonkonogoff's Estate,* 177 Misc. 1015, 32 N.Y.S.2d 661 (Surrogate's Ct. 1941). *Tonkonogoff* applied the rule that "if by the law of the state which has created a right of action, it is made a condition of the right that it shall expire after a certain period of limitation has elapsed, no action begun after the period has elapsed can be maintained in any state." 32 N.Y.S.2d at 667 (*quoting* Restatement of Conflict of Laws § 605). The Second Circuit has questioned whether this rule has continued vitality. *Clarke v. Pennsylvania Railroad Co.,* 341 F.2d 430 (2d Cir.1965). Assuming that it has, the Court holds, nevertheless, that *Tonkonogoff* represents an improper application of this rule, which finds little or no support in the cases which preceded or followed it, and should not be applied here. Having surveyed New York cases applying this rule, it is clear that in

New York, as in other courts, "[t]he almost invariable prerequisite is that the liability sought to be enforced must have been created by statute." Restatement (2d) of Conflict of Laws § 143, Comment c. Although defendants assert that this action would be barred by Nicaragua's prescriptive period, and that, under Nicaraguan law, prescription extinguishes both the right and the remedy, they do not claim that this action was created by any Nicaraguan statute. Thus, defendants' assertion that this action was "created" by Nicaraguan law begs the question to be answered with respect to New York's borrowing statute. *See* p. 316 *infra.* Insofar as that statute leads to the conclusion that this action accrued in Massachusetts, *see* p. 317 *infra,* the Court finds no logical basis for reaching the contrary conclusion that this action was "created" in Nicaragua in order to apply the rule urged by defendants.

ute, the Second Circuit Court of Appeals has consistently held that it would not. *Lang v. Paine, Webber, Jackson & Curtis, Inc.,* 582 F.Supp. 1421, 1425 (S.D.N.Y. 1984). *See also In re Agent Orange, supra,* 597 F.Supp. at 802 ("In the absence of state case law directly on point, the Second Circuit, estimating what New York's highest court would rule, has embraced the traditional doctrine that the place of injury determines where a cause of action accrues."); *Maiden v. Biehl,* 582 F.Supp. 1209, 1212 (S.D.N.Y.1984) ("The Second Circuit has made it clear that choice of law principles based on grouping of contacts do not apply to borrowing statute analysis.").

With regard to the more specific inquiry as to how the borrowing statute applies to a breach of contract claim, both parties cite *Tandoc v. Luckenbach S.S. Co.,* 5 A.D.2d 857, 171 N.Y.S.2d 381 (1st Dep't 1958), as authority. *Tandoc* teaches that "[a] cause of action arises when and where the breach occurs, even though the place of contracting be elsewhere." 5 A.D.2d at 858, 171 N.Y.S.2d at 382. In light of *Tandoc,* defendants argue that "the breach or nonperformance occurred in Nicaragua when the stock held as security depreciated in value and defendants were unable to make payments by reason of currency restrictions." Defendants' Brief at 9–10. Plaintiff rebuts defendants' argument as follows:

> [Defendants] argue that the causes of action accrued in Nicaragua because various events occurred in Nicaragua, *e.g.,* civil insurrection, the enactment of currency restrictions and the expropriation of their property, which they claim explain their refusal to repay the loan. While these events may have constituted acts of default which would have given BBIM the right (but not the obligation) to accelerate the amounts due under the Promissory Note and Loan Agreement, they are simply not the breaches upon which this action is based.

Plaintiff's Brief at 11. Instead, plaintiff argues that the relevant breaches were the defendants' failure to make payments on the loan in January 1979 and thereafter. Because under the terms of the promissory note all payments were to be made at the head office of the First National Bank of Boston, in Boston, Massachusetts, plaintiff argues that Massachusetts is the state where the cause of action accrued.

Bearing in mind the general principle that a cause of action accrues at the place of injury, the Court finds plaintiff's argument to be the more convincing one. Although it is obvious that events which took place in Nicaragua were causally related to the breach of contract that is at issue, it is also clear that the injury alleged to be suffered by the plaintiff was felt when payments were not made at the contractually agreed upon location. Moreover, plaintiff's argument is supported by uncontradicted, if somewhat ancient, authority that for the purposes of the borrowing statute, a cause of action for nonpayment of a promissory note accrues in the state where the note was payable. *Farmers' Trust Co. v. Bradshaw,* 137 Misc. 203, 242 N.Y.S. 598 (N.Y.City Ct.1930).

Both parties agree that this action is timely under the relevant Massachusetts statute of limitations. Mass.Stat. Ann. Ch. 260, §§ 1, 2. Defendants, however, make two further arguments in favor of applying Nicaraguan law to this action. First, they attempt to rely on the Second Circuit's holding in *Stafford, supra,* that "a cause of action cannot accrue for purposes of New York's borrowing statute in a state which could not exercise jurisdiction over the cause of action." 668 F.2d at 153. Assuming that defendants' visits to Massachusetts in connection with the transactions at issue did not subject them to jurisdiction in that state, defendants' reliance on *Stafford* is nevertheless unavailing. The rule in *Stafford* was formulated to shield plaintiffs from possible illogical applications of the borrowing statute:

> Insofar as the purpose of the borrowing statute is ... to prevent a plaintiff from forum shopping, it makes no sense at all to apply the shorter limitation of a state

where the defendant could not have been sued.

*Id.* at 152. As such, it would be anomalous to allow that rule to be used as a sword by defendants. But even if defendants were allowed to invoke the rule, they would not benefit from it. Defendants argue that the *Stafford* rule should be used to determine where the cause of action accrued: if defendants are not subject to jurisdiction in Massachusetts, the Court must then conclude that the cause of action accrued in Nicaragua, where defendants are subject to jurisdiction. The logic of this argument does not comport with the analysis in *Stafford*. In *Stafford*, the court first applied the "place of injury" rule to determine that the cause of action accrued in Pennsylvania. It next decided that because one of the defendants in that action was not amenable to process in Pennsylvania, the Pennsylvania statute of limitations should not be allowed to bar a claim against that defendant. Contrary to defendants' argument, however, this latter conclusion did not compel the court to decide that its conclusion concerning the place of accrual was therefore mistaken. Rather, with respect to a second defendant which was amenable to process in Pennsylvania, the court reiterated its finding that the cause of action had accrued there and, finding no reason not to apply the borrowing statute, barred the plaintiff's claim.

 Defendants also argue that in borrowing the Massachusetts statute of limitations, this Court should also borrow Massachusetts' borrowing statute.[3] That statute provides that "no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein." Mass.Stat.Ann. Ch. 260, § 9. Although neither party has cited any cases interpreting this provision, it seems clear that this statute would lead the Court to apply the law of Florida, the state of plaintiff's residence. From Florida, the defendants contend, the Court would be referred by *Florida's* borrowing statute to Nicaraguan law.[4] Florida's borrowing statute is as follows:

> When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.

Fla.Stat.Ann. § 95.10. Defendants argue that Florida would look to Nicaragua as the location where the cause of action arose. This argument must fail for the same reasons that it failed as a matter of New York law. Applying the Florida borrowing statute to an action on a promissory note which had been executed in California but was payable in Florida, a Florida court stated:

> The maker had promised to pay in Florida. When he breached this promise, the plaintiff had a cause of action. The incident (failure to pay) which created the cause of action occurred in Florida; therefore, the cause of action arose in Florida.

*Aviation Credit Corporation v. Batchelor,* 190 So.2d 8, 11 (Fla.App.1966), *writ*

---

**3.** Plaintiff conceded this point at oral argument. A leading commentator has stated:

> Generally, the borrowing is of the other state's limitation period only, and not of the other state's borrowing statute also. The renvoi difficulties which the latter approach could produce would be intolerable.

Leflar, *American Conflicts Law* (3d ed. 1977) at 256 (footnotes omitted); *see also* Restatement (2d) of Conflict of Laws § 8, Comment i. Nevertheless, at least two New York courts have chosen this "latter approach." *Ross v. Graham,* 122 Misc. 574, 203 N.Y.S. 390 (Sup.Ct.1924); *Holmes v. Hengen,* 41 Misc. 521, 85 N.Y.S. 35 (Sup.Ct.1903), *aff'd,* 94 App.Div. 619, 88 N.Y.S.

1104 (1st Dep't 1904). *Cf. Antone v. General Motors Corp.,* 64 N.Y.2d 20, 31, 484 N.Y.S.2d 514, 519, 473 N.E.2d 742 (1984) ("[I]n 'borrowing' a Statute of Limitations of another State, a New York court will also 'borrow' the other State's rules as to tolling.").

**4.** Defendants also argue that this action is barred by Florida's five year statute of limitations. Fla.Stat.Ann. §§ 95.11(2), (3). Plaintiff, however, correctly invokes the protection of Fla.Stat.Ann. § 95.051(1)(a) which tolls the running of time under the statute of limitations during the "[a]bsence from the state of the person to be sued."

*dismissed,* 198 So.2d 24 (Fla.1967). In addition, a Florida intermediate court has determined recently that although the Supreme Court of Florida has adopted modern conflict of laws principles in determining what substantive law should apply to an action, *see Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla.1980), it would retain the rule of lex loci delicti in determining where a cause of action arose for the purposes of the borrowing statute. *Pledger v. Burnup & Sims, Inc.,* 432 So.2d 1323, 1329–31 (Fla.App.1983), *review denied,* 446 So.2d 99 (Fla.1984). Because the place of the wrong in this case is Massachusetts, applying the Florida borrowing statute would yield the same result as reached above. Plaintiff's actions against the defendants are timely.

## II. *Forum Non Conveniens*

■ Defendants also move to dismiss this case on the ground that Nicaragua would be a more convenient forum in which to try this case. In assessing the defendants' request, the Court is required to consider several factors, taking into account the private interest of the litigants, as well as the public interest.[5] *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In weighing these factors, the Court is admonished that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843.

■ Having considered the arguments put forth by the defendants, I find that they have not met their burden of showing that plaintiff's choice of forum should be disturbed. Disputing plaintiff's contention that "virtually all of the conceivable witnesses are located in the United States," Plaintiff's Brief at 21, defendants give the names of four potential witnesses who reside, respectively, in Spain, Nicaragua,

Puerto Rico and Venezuela. Defendants' Reply Brief at 25–26. While it may be that litigation of this case in New York will involve certain costs and inconvenience, it has not been shown that litigation in Nicaragua would be "easy, expeditious and inexpensive." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843.

More importantly, the fact that defendants reside in New York "weighs heavily against dismissal." *Schertenleib v. Traum,* 589 F.2d 1156, 1164 (2d Cir.1978). Dismissing this case would not serve the purpose of the doctrine of *forum non conveniens* as perceived by the Supreme Court in *Gulf Oil:*

> It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right or to pursue his remedy.

330 U.S. at 508, 67 S.Ct. at 843. In view of defendants' assertion that they fled Nicaragua in 1979 in fear for their personal safety, *see* October 26, 1984 Affidavit of Roberto Arguello at ¶¶ 15–16, it can hardly be said that plaintiff's decision to commence this lawsuit in New York rather than in Nicaragua was, in any way, vexatious, harassing or oppressive.

## *Conclusion*

For the reasons stated above, defendants' motion to dismiss is denied.

SO ORDERED.

---

5. The Second Circuit has not decided "the intriguing question ... whether, in diversity cases ..., state law or federal law is the source of the rules governing the *forum non conveniens* doctrine." *Schertenleib v. Traum,* 589 F.2d 1156, 1162 n. 13 (2d Cir.1978). Neither party has addressed this issue; both parties have relied on federal cases alone. "In light of the similarity of the federal and state *forum non conveniens* doctrines," *Olympic Corporation v. Societe Generale,* 462 F.2d 376, 379 (2d Cir.1972), this question may again be left to another day.