**Neal L. MASLAN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., d/b/a Admirals Club, Defendant.**

**No. 93 Civ. 0156 (RWS).**

United States District Court, S.D. New York.

May 3, 1995.

Kreindler & Kreindler, New York City (Paul S. Edelman, of counsel), for plaintiff.

Shearman & Sterling, New York City (William J.F. Roll, III, Karen M. Crupi, of counsel), for defendant.

## OPINION

SWEET, District Judge.

In this breach of contract suit brought by Neal Maslan ("Maslan") on behalf of himself and a putative class of others similarly situated, defendant American Airlines, Inc. ("American") moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons discussed herein, summary judgment will be granted.

### The Parties

American, a Delaware corporation with its principal place of business in Fort Worth, Texas, is a passenger airline company which also operates ground facilities at airports in numerous locations. Maslan, a natural per-

son, is a California resident who is a member of American's Admirals Club.

### Prior Proceedings

Maslan commenced this action in state court in New York on December 9, 1993. The action was removed to this Court on January 11, 1994. American filed an answer on February 3, 1994. Discovery was conducted and American filed the within motion on October 20, 1994. Maslan filed responsive papers on November 22, 1994; American made its reply on December 5, 1994 and oral argument was heard on that date.

### The Facts

American operates a number of private airport clubs known as "Admirals Clubs" located in various airports such as those of Boston, Chicago, Dallas/Fort Worth, Detroit, Cincinnati, Los Angeles, Cleveland, San Francisco, St. Louis, Toronto, Washington and one facility in each of New York's LaGuardia and Kennedy Airports. The administrative offices of American are located in Fort Worth, Texas.

Membership in the Admirals Club is open to all persons 18 years of age and older upon application and payment of the appropriate dues. Individuals have the option of paying annual dues or becoming lifetime members of the Club in exchange for a one-time payment of lifetime membership dues. Maslan became a lifetime member in 1977. He paid $300 in lifetime membership dues.

Admirals Club members are entitled to utilize club facilities and certain other amenities, such as Admirals Club conference rooms to conduct business and other meetings. From the time that Maslan became a lifetime member of the Admirals Club until 1986, members were entitled to utilize conference room facilities at Admirals Clubs without any charge beyond the prepaid lifetime fee.

On November 1, 1986, American began charging Club members $25.00 per hour for each hour of conference room use after the first hour. On September 15, 1989, American began charging $25.00 for each hour including the first hour. At some time during 1993 American opened new conference facilities at New York's LaGuardia Airport and Chicago's O'Hare International, at which American charges a minimum of $40 per hour from the first hour.

In 1988 these conference room rental charges produced $430,000 of revenue for American. In 1989 American executives projected that their conference rooms at LaGuardia alone would produce an annual revenue of $286,700.

Between 1977 and the commencement of this action Maslan flew over one million miles on American. Since the imposition of charges for conference room time he has flown on other airlines and used the conference facilities of those other airlines, used other non-private American airport facilities for meetings, or used the Admirals Club conference facilities and paid the additional charges.

### Discussion

### Rule 56 Standards for Summary Judgment

■ The instant motion is brought pursuant to Rule 56. The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

■ The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct.

1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

This standard is applied to the instant motion.

### Statute of Limitations

American asserts three alternative theories. First, they contend that Maslan's action is barred in its entirety by the application of the four-year statute of limitations of Texas, the state which has the greatest interest in the instant matter. Second, American asserts that, if not barred by the application of Texas' statute of limitations, then Maslan's claim is similarly barred by the application of the four-year limitation period of California, the state of Maslan's residence. Finally, American contends that if neither Texas' nor California's statute applies, then Maslan's claim is partially time-barred by application of New York's six-year statute of limitation.

■ American's assertion regarding Texas and California are founded upon New York's borrowing statute. New York's borrowing statute requires that a suit based on a cause of action which accrued outside New York State cannot be commenced after the expiration of the limitation period of either New York or the state in which the cause of action accrued. N.Y.Civ.Prac.L. & R. § 202 (McKinney 1990). Thus, if Maslan's cause of action accrued outside of New York State, then the applicable statute of limitations of the state in which the claim did accrue will control the action.

■ The New York borrowing statute is applicable to actions for breach of contract. *See Holtzman v. CMCO, Inc.*, 90 Civ. 5530, 1991 WL 60402 (S.D.N.Y. April 5, 1991).

■ Questions of fact that arise in applying a statute of limitations are for the trier of fact. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 n. 2 (2d Cir.1984). Since statutes of limitations operate as affirmative defenses, *see Romano v. Romano*, 19 N.Y.2d 444, 280 N.Y.S.2d 570, 573, 227 N.E.2d 389, 391 (1967) and since New York's borrowing statute is framed as an exception to the State's basic limitation rules, the party seeking to borrow a foreign statute of limitations is burdened to show, *inter alia*, that the cause of action accrued outside New York. *Katz*, 737 F.2d at 243; *Romano*, 280 N.Y.S.2d at 573, 227 N.E.2d at 391; *Brush v. Olivo*, 81 A.D.2d 852, 438 N.Y.S.2d 857, 859 (N.Y.App.Div.1981). Thus, American seeks summary judgment on an issue for which it bears the affirmative burden of proof.

■ American asserts that Texas' statute of limitation should be applied because Texas has the greatest interest in this litigation. New York has, as a general matter, adopted a version of interest analysis for resolving conflict of laws issues, *see Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), and this type of analysis was apparently applied to the borrowing statute by the New York Court of Appeals in 1978. *See Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 187, 189–90, 374 N.E.2d 97, 98, 100–01 (1978). District courts interpreting New York law have expressed agreement with the *Martin* approach both before and after it was adopted by the New York Court of Appeals. *See Haberman v. Tobin*, 466 F.Supp. 447 (S.D.N.Y.1979); *State Teachers Retirement Board v. Fluor Corp.*, 84 F.R.D. 38 (S.D.N.Y. 1979); *Natural Resources Corp. v. Royal Resources Corp.*, 427 F.Supp. 880 (S.D.N.Y. 1977).

Regarding the borrowing statute it has been said that "[t]he New York Court of Appeals has furnished little guidance." *In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 801 (E.D.N.Y.1984) *aff'd*, 818 F.2d 145 (1987); *see also Bank of Boston International Miami v. Arguello Tefel*, 626 F.Supp. 314, 316 (S.D.N.Y.1986). Only three years after *Martin* the Court of Appeals for this Circuit apparently approved the more

traditional "place-of-injury" test over interest analysis for use in determining whether or not a claim accrued outside of New York State. *See Stafford v. Int'l Harvester Co.,* 668 F.2d 142, 148–49, 150 (2d Cir.1981) (approving district court's "estimate" that New York law, although unsettled, would be understood by New York's own courts to require "place-of-injury" test as opposed to "grouping of contacts" test in applying borrowing statute). *Stafford* has had its followers in applying the "place-of-injury" test. *Tammac Corp. v. Williams,* 92 Civ. 390S, 1993 WL 330639, at *20–21 (W.D.N.Y. Aug. 13, 1993); *Heineman v. S & S Mach. Co.,* 707 F.Supp. 86, 89 (E.D.N.Y.1989) ("choice of law principles based on grouping of contacts do not apply to borrowing statute analysis"); *Bank of Boston International of Miami v. Arguello Tefel,* 626 F.Supp. 314, 316–17 (S.D.N.Y.1986); *Lang v. Paine, Webber, Jackson & Curtis, Inc.,* 582 F.Supp. 1421, 1425 (S.D.N.Y.1984); *Maiden v. Biehl,* 582 F.Supp. 1209, 1212 (S.D.N.Y.1984). Additionally, proponents of this view can lay claim to its grounding in earlier case law. *See Arneil v. Ramsey,* 550 F.2d 774 (2d Cir. 1977); *Sack v. Low,* 478 F.2d 360, 367 (2d Cir.1973).

Given the state of the law on this subject, American's motion is considered under both methods. As will be seen, Maslan's action is time-barred under either approach.

Both Texas and California have a four-year statute of limitations for breach of contract actions. Maslan commenced this action on December 9, 1993. American began charging for the second hour of conference room use on November 1, 1986. Regarding this injury any action for breach of contract filed after November 1, 1990 would be barred by a four-year statute of limitations. American began charging for the first hour of conference room use on September 15, 1989. A four-year limitation period regarding this injury ran as of September 15, 1993. Thus if either Texas' or California's statute of limitations is applied by operation of New York's borrowing statute, Maslan's action is time-barred in its entirety.

In *State Teachers Retirement Board v. Fluor Corporation,* this Court noted that in a class action the application of limitations periods from the states of residence of diverse class members would serve to defeat a necessary condition of class certification—commonality of issues, thereby rendering unmaintainable many otherwise viable class actions. 80 F.R.D. 142, 144 (S.D.N.Y.1979). Thus the asserted existence of a class of diverse plaintiffs argues strongly for the application of interest analysis to arrive at one, as opposed to many, applicable state limitation periods.

■ American's principal place of business is in Texas and the Admirals Club administrative offices are located there. It is undisputed that the decisions in November 1986 and September 1989 to impose fees for the use of Admirals Club conference rooms were made in Texas. Since the states of residence of the putative class members would certainly be diverse, Texas, by virtue of its strong interest in the conduct of the sole defendant in this action, would have a greater interest than any other single state. New York's only interests in this action are (i) the extent to which putative class members are New York residents and/or (ii) New York's interest in those in-state dealings between American and its customers at American's facilities at LaGuardia and Kennedy Airports. The significance of this interest does not outweigh Texas' interest in the regulation of a large resident corporation in the full spectrum of its conduct. Thus interest analysis results in application of Texas' four-year statute of limitations, barring Maslan's claim in its entirety.

■ When the "place-of-injury" test is applied to economic harm the cause of action is said to accrue where the economic impact of the defendant's conduct is felt—usually the state of plaintiff's residence. *Stafford,* 668 F.2d at 151; *Merine v. Prudential Bache Utility Fund, Inc.* 859 F.Supp. 715, 724 (1994); *Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397, 1405 (S.D.N.Y. 1985) (citing *Industrial Consultants v. H.S. Equities,* 646 F.2d 746, 747 (2d Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981)). For a corporation the place where economic injury is felt is usually understood to be its place of incorporation.

*See Tammac,* 1993 WL 330639, at *21. In the context of breach of contract claims, courts have held that the place of injury is determined by identifying where the harm from nonperformance was felt. *See Tammac,* 1993 WL 330639 at *20–21 (W.D.N.Y. Aug. 13, 1993); *Walsh v. Maryland Bank, N.A.,* 806 F.Supp. 437, 444 (S.D.N.Y.1992).

The legal place of injury for non-economic harm is understood to be the factual location of the injury. Since the imposition of fees on the conference facilities Maslan has either (a) used other airlines and used their conference facilities, (b) travelled on American and used only the non-private accommodations that the Admirals Club provides to all members without charge, such as lounges, or (c) used Admirals Club conference facilities and paid the additional fees. It is important to note that all three of these amount to no more than economic injury. Steps that Maslan may have taken to avoid payment of the additional charges imposed by American do not, regardless of the degree of inconvenience he may have endured, convert American's demand for more money into a non-economic injury.

Under extraordinary circumstances the impact of defendant's conduct can be felt in a state other than the plaintiff's state of residence. *See Farley v. Baird, Patrick & Co.,* 750 F.Supp. 1209, 1215 (S.D.N.Y.1990); *Gorlin v. Bond Richman & Co.,* 706 F.Supp. 236, 240 n. 8 (S.D.N.Y.1989). No such unusual circumstances are present here. Thus, under the "place-of-injury" test, the legal situs of Maslan's injury was California. Thus if the "place-of-injury" test is used to apply the borrowing statute, California's four-year limitation period bars Maslan's claim in its entirety.

Since neither method of applying the borrowing statute results in a conclusion that Maslan's claim accrued within the State of New York, the question of whether the claim is partially barred by New York's six-year limitation period need not be reached.

Since both interest analysis and the "place-of-injury" test result in the conclusion that Maslan's claim is time-barred, summary judgment will be granted and Maslan's claim will be dismissed.

*Conclusion*

For all the reasons discussed above, American's motion for summary judgment is granted.