Robert GLUCK et al., Plaintiffs,

v.

AMICOR INCORPORATED et al., Defendants.

No. 79 Civ. 2586(HFW).

United States District Court, S. D. New York.

April 14, 1980.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, by Steven A. Coploff, New York City, of counsel and Foley, Hoag & Eliot, Boston, Mass., by William J. Cheeseman, Peter M. Rosenblum, Boston, Mass., of counsel, for plaintiffs.

Burns, Jackson, Miller, Summit & Jacoby, New York City, by Stuart A. Summit, Guy R. Fairstein, New York City, of counsel, for defendants Amicor Incorp., Mark Auerbach, Robert C. Dean, Jr., Francis F. Fabian, Jr., Richard J. Grosh, Charles A. Macaluso and Jack H. Vollbrecht.

Sullivan & Cromwell, New York City, by Michael A. Cooper, Richard G. Lyon, Charles E. Wilson, New York City, of counsel, for defendant Deloitte Haskins & Sells.

Tucker & Globerman, New York City, by Michael H. Goldberg, New York City, of counsel, for defendant Arthur Cantor.

## OPINION

WERKER, District Judge.

■ This securities action was commenced by the plaintiffs Robert Gluck and Jerome Preston, Jr. as trustees of three litigation trusts against the defendants [1] for alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.[2] All of the defendants who have been served with process [3] move to dismiss the complaint on the grounds (1) that the claims asserted herein are barred by the applicable statute of limitations, and (2) that the plaintiffs are not the real parties in interest. Fed.R. Civ.P. 12(b)(6), 17(a).

1. The complaint names the following 22 defendants: Amicor Incorporated, Peter Adolph, Mark Auerbach, Arthur Cantor, Robert B. Carter, Norman J. Davidson, Robert C. Dean, Jr., Cesare De Franceschini, Ecological Science Corporation, Francis G. Fabian, Jr., Richard J. Grosh, Deloitte Haskins & Sells, Harold P. Koenig, Charles A. Macaluso, J. Peter Martin, George V.R. Mulligan, Norman Prusinski, Richard J. Silvestrini, Jack H. Vollbrecht, Jerome S. Wagshal, C.E. Woollen and Rensselaer W. Bartram III. Ecological Science Corporation and Amicor Incorporated are the same entity, Ecological Science Corporation having changed its

## FACTS

For purposes of this motion, the well pleaded allegations of the complaint are taken as being true.

The plaintiffs are not residents of New York. Complaint ¶ 3. The three litigation trusts, Admiralty Fund Growth Series Litigation Trust ("Admiralty Growth"), Admiralty Fund Insurance Series Litigation Trust ("Admiralty Insurance"), and Seaboard Leverage Fund Litigation Trust ("Seaboard Trust"), were established in New York in 1976 in connection with mergers of Oppenheimer A.I.M. Fund, Inc. ("Oppenheimer") with Admiralty Fund and Seaboard Leverage Fund ("Seaboard Fund"). Oppenheimer is a Maryland corporation, and Admiralty Fund and Seaboard Fund are Delaware corporations. *Id.* ¶¶ 4, 5. Admiralty Fund assigned all of its rights to the claims asserted herein to Admiralty Growth and Admiralty Insurance, and Seaboard Fund assigned all of its rights to the claims asserted herein to Seaboard Trust. *Id.* ¶¶ 4, 5.

Between April 29, 1970 and September 4, 1970, Admiralty Fund purchased a total of 70,000 shares of the common stock of Ecological Science Corporation ("ECO"). Admiralty Fund sold this stock in separate transactions in January 1971 and December 1972 at a substantial loss. Complaint ¶ 6. Between April 29, 1969 and May 2, 1969, Seaboard Fund purchased a total of 10,000 shares of ECO's common stock. Seaboard Fund sold this stock at a substantial loss in a series of transactions from July 30, 1969 until August 21, 1969. *Id.* ¶ 7. At the time

name to Amicor Incorporated in 1973. Defendants' Mem. in Supp. of Motion, at 1 n.

2. The complaint alleges violations of other securities laws as well. *See* complaint ¶ 1. These other claims are derivative in nature and, in light of my ruling on the section 10(b) claims, need not be elaborated upon.

3. As to those defendants who have not been served with process, and thus who have not joined in the motion, the complaint is dismissed for failure to prosecute.

these transactions were entered into, Admiralty Fund and Seaboard Fund had their principal places of business in California.[4]

On April 30, 1971, the Securities Exchange Commission filed a complaint against ECO and its then president, Harold P. Koenig, for alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.-10b–5. That same day ECO and Koenig consented to the entry of judgments permanently enjoining them from violating the securities laws in the future and requiring ECO to file a restated Form 10–K for the year 1969. *SEC v. Ecological Science Corp.*, [1970–71 Transfer Binder] CCH Fed.Sec.L. Rep. ¶ 93,025 (S.D.N.Y.1971).

Within a matter of days after the entry of the consent judgments, a number of private damages actions were filed on behalf of purchasers of ECO stock. Sixteen of these actions, all but one of which purported to be class actions, were eventually brought. All of the suits that had not been filed in the Southern District of Florida were transferred to that district, and the sixteen actions were consolidated on March 20, 1972. Named as defendants were ECO, certain of its officers, directors and subsidiaries, and its accountants, Haskins & Sells. A consolidated amended complaint was filed asserting eight claims on behalf of thirty-two named plaintiffs. Five of the claims were alleged on behalf of purchasers of ECO stock during the period November 27, 1967 through approximately May 26, 1971. *See Pearson v. Ecological Science Corp.*, 522 F.2d 171, 172–73 (5th Cir. 1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976).

On March 13, 1973, after oral argument and the filing of briefs, the district court for the Southern District of Florida denied the plaintiffs' motion for class certification on a number of grounds. [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,030. In denying the class certification motion, the court expressly invited interested shareholders who were members of the disallowed class to intervene:

> [T]hose 'nominal' aggrieved shareholders with an interest in maintaining an action against defendants may petition to intervene herein at little expense. Such leave to intervene in this nationally well-publicized action has been accorded previously in this cause, and will continue to be accorded, interested shareholders.

*Id.* at 94,146. Some sixty-seven individual and institutional shareholders moved for and were granted leave to intervene, but the Admiralty Fund and the Seaboard Fund were not among them. Defendants' Mem. in Supp. of Motion, at 7, *citing* orders filed in 1972–73.

The *Pearson* litigation was settled in February of 1974. Several attempts were made to prevent the consummation of the settlement, but these efforts proved unsuccessful as the district court entered an order approving the terms of the stipulation of settlement on March 28, 1974. The litigation was dismissed with prejudice in accordance with the terms of the settlement agreement on April 4, 1974. The district court's orders were upheld by the fifth circuit on appeal in 1975, 522 F.2d 171, and a petition for certiorari was denied in 1976. 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762.

In 1975, four additional private securities actions were filed on behalf of ECO stockholders, and a fifth such action was instituted in 1977. These five actions were consolidated for pretrial purposes in the Southern District of Florida. Two of the five actions, *Frankel v. Adolph*, 75 Civ. 1057 (WMH), and *Jenny v. Haskins & Sells*, 75 Civ. 1144 (WMH), were filed as class actions. On February 22, 1978, the Florida district court denied the plaintiff's motion in *Jenny* for class certification. On February 16, 1979, the Court denied the motion for certifica-

---

4. *See Competitive Associates, Inc. v. International Health Sciences, Inc.*, [1974–1975 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,966, at 97,323 (S.D.N.Y.1975); Wiesenberger Services, Inc., *Investment Companies 1970* 149, 306.

The plaintiffs have not denied the fact that Admiralty Fund and Seaboard Fund had their principal places of business in California. *See* affid., of Jerome Preston, Jr., executed on Oct. 12, 1979; Plaintiffs' Mem. in Opp. to Motion.

tion of the class pleaded in the *Frankel* complaint, but reserved decision as to the certification of a subclass of purchasers of ECO common stock from April 20, 1970 until April 30, 1971.

On May 17, 1979, the plaintiffs commenced the instant action. They simultaneously moved for leave to intervene in the *Jenny* and *Frankel* suits. Those motions are apparently still *sub judice.*

■ The defendants herein moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and (17(a). Since matters outside the complaint have been presented to and not excluded by the Court, the motion to dismiss is being treated as a motion for summary judgment. Fed.R.Civ.P. 12(c). The plaintiffs maintain that they need additional time to conduct discovery relating to the issues raised by the defendants, and argue that the motion cannot be granted at this time. It is evident from the discussion below, however, that additional discovery is unnecessary, for there are no genuine issues of material fact. For the reasons that follow, the motion to dismiss, treated as a motion for summary judgment, is hereby granted.

## DISCUSSION

■ The timeliness of an action brought in federal court for alleged violations of the federal securities laws is to be determined by referring to the applicable statute of limitations of the forum state, including any "borrowing statute." *Robertson v. Seidman & Seidman,* 609 F.2d 583, 586 (2d Cir. 1979); *Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir. 1977). The New York borrowing statute provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y.C.P.L.R. § 202 (McKinney 1972). The borrowing statute is thus applicable to suits brought in New York by nonresidents on causes of action accruing outside the state.

■ The plaintiff trustees in the instant action are not residents of New York. The three litigations trusts, however, were established in New York. Notwithstanding this fact, the borrowing statute may still be applicable, for the litigation trusts received the claims asserted herein from nonresident assignors. As Dean McLaughlin has observed, "[I]f the cause of action accrues to a nonresident who later assigns the claim to a New York resident, the borrowing statute will apply. In other words, the assignor's residence is crucial for purposes of the borrowing statute." Practice Commentary C202:3 (1979), at N.Y.C.P.L.R. § 202 (McKinney Supp. 1979–1980). *See U. S. Fidelity & Guaranty Co. v. E. W. Smith Co.,* 46 N.Y.2d 498, 504, 387 N.E.2d 604, 607, 414 N.Y.S.2d 672, 675 (1979) ("The critical factor is . . . the residency of the person in whose favor the cause of action accrued.") (citation omitted). Since the plaintiffs are suing on behalf of assignees of nonresident assignors in whose favor the causes of action asserted herein accrued, the borrowing statute may be applicable.

■ A more difficult question is posed by the issue of where the cause of action arose. The plaintiffs argue that because the stock transactions involved herein were executed on the American Stock Exchange in New York, the claims arising from these transactions accrued in New York. Consequently, plaintiffs maintain, the borrowing statute is not invoked and the six-year New York fraud statute of limitations is to be applied. N.Y.C.P.L.R. § 213(8) (McKinney Supp. 1979–1980). The defendants, however, contend that the causes of action accrued in California, since that was the state in which the assignors had their principal places of business when they purchased the ECO stock in question. The defendants therefore urge the Court to apply the three-year California statute of limitations applicable to securities fraud cases. Cal.Civ.Proc.Code § 338(4); *United California Bank v. Salik,*

481 F.2d 1012 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973).

In *Sack v. Low*, 478 F.2d 360 (2d Cir. 1973), the second circuit held that the test to apply to determine where a cause of action accrues for purposes of the New York borrowing statute is the traditional "place of injury" test: "the cause of action accrues *where* the loss is suffered." *Id.* at 366 (emphasis in original). In 1977, the second circuit reaffirmed *Sack v. Low*, and held that "a cause of action for fraud under Section 10(b) of the Exchange Act arises where 'its economic impact is felt, normally the plaintiff's residence.'" *Arneil v. Ramsey*, 550 F.2d at 779, quoting *Sack v. Low*, 478 F.2d at 366. Under the traditional test, then, the California statute of limitations would apply, since California was the state in which the assignors had their principal places of business when they purchased the stock in question. *Korn v. Merrill*, 403 F.Supp. 377, 385–86 (S.D.N.Y.1975), *aff'd mem.*, 538 F.2d 310 (2d Cir. 1976).

The continued validity of the *Sack v. Low* rule, however, has come under question because of the decision of the New York Supreme Court, Appellate Division, Second Department, in *Martin v. Julius Dierck Equipment Co.*, 52 App.Div.2d 463, 384 N.Y. S.2d 479 (2d Dep't 1976), *aff'd*, 43 N.Y.2d 583, 374 N.E.2d 97, 403 N.Y.S.2d 185 (1978). There, the Second Department expressly applied the "most significant contacts" choice of law test to a borrowing statute situation. 52 App.Div.2d at 466–68, 384 N.Y.S.2d at 482–83.[5] *See generally Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F.Supp. 972, 977–79 (S.D.N.Y. 1979); *Haberman v. Tobin*, 466 F.Supp. 447, 449–50 (S.D.N.Y.1979); *Bache Halsey Stuart, Inc. v. Namm*, 446 F.Supp. 692, 696–

97 (S.D.N.Y.1978); J. McLaughlin, Practice Commentary C202:3 (1978), at N.Y.C.P.L.R. § 202 (McKinney Supp. 1979–1980). To date, the second circuit has not expressly adopted the "most significant contacts" test for borrowing statute purposes. Although Judge Timbers did list the various contacts in *Robertson v. Seidman & Seidman, supra*, the parties in that case agreed that the Alaska statute of limitations was the appropriate statute to apply. Hence, there was no real controversy as to where the cause of action accrued.

In any event, even if the "most significant contacts" test is applied to the instant case, the result would be the same. The only relevant New York contact is the place of execution of the stock transactions. The fact that the assignor corporations had their principal places of business in California at the time they bought the stock is a more significant contact, for it was there that they sustained any economic loss and suffered any injury. *See Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 591, 374 N.E.2d 97, 101, 403 N.Y.S.2d 185, 189 (1978); *Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F.Supp. at 979. Hence, whether the "place of injury" or the "most significant contacts" test is utilized, the California three-year statute of limitations is the proper statute to apply.

Having ascertained the length of the limitations period, the next task is to determine when the period began to run, a determination which is to be made under federal law. As the second circuit has noted on a number of occasions, "the statute of limitations begins to run . . . from the time at which plaintiff should have discovered the general fraudulent scheme." *Berry Petroleum Co. v. Adams & Peck*, 518

---

5. In affirming the Second Department's order, the New York Court of Appeals did not expressly adopt the "most significant contacts" test for borrowing statute purposes. In fact, it could be argued that the Court of Appeals applied the traditional place of injury test, for the court held that the "[p]laintiff possessed no cause of action, in tort or in contract, anywhere in the world until he was injured in Virginia." 43 N.Y.2d at 591, 374 N.E.2d at 101, 403 N.Y.

S.2d at 189 (applying Virginia statute of limitations under New York borrowing statute). *See Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F.Supp. 972, 978 (S.D.N.Y. 1979) ("[T]he Court of Appeals' *Martin* opinion . . . seems to have strengthened the *Arneil* Court's approach to the borrowing statute question."). *But see* J. McLaughlin, Practice Commentary C202:3 (1978), at N.Y.C.P.L.R. § 202 (McKinney Supp. 1979–1980).

F.2d 402, 410 (2d Cir. 1975); *accord, Robertson v. Seidman & Seidman,* 609 F.2d at 587; *Arneil v. Ramsey,* 550 F.2d at 780. Although this question ordinarily involves issues of fact, no such issues of fact are posed by the instant motion since the complaint itself alleges a time when the assignor corporations should have discovered the alleged fraud. The complaint alleges that "Admiralty Fund and Seaboard Leverage Fund did not discover, and in the exercise of reasonable care could not have discovered, the violations of law alleged herein until after April 30, 1971." Complaint ¶ 8. Although the complaint utilizes the words "after April 30, 1971" without providing a specific date, there can be no question that the alleged fraud should have been discovered by April 30, 1971. The SEC's investigation of ECO was commenced in 1970 and became public in January 1971 when the matter was reported in The Wall Street Journal and The Miami Herald. *See* affid. of Stuart A. Summit, sworn to Aug. 10, 1979, exh. A. The SEC investigation resulted in the filing of a complaint against ECO and its president on April 30, 1971, and that same day consent judgments were entered and trading in ECO stock was suspended. Under these circumstances, the plaintiffs certainly should have discovered the "general fraudulent scheme" by that date. Consequently, for purposes of this motion, the three-year limitations period will be measured from April 30, 1971.[6]

It would thus appear that the plaintiffs' claims are time-barred, since their complaint was not filed until May 17, 1979, more than eight years after the statute of limitations began to run. The plaintiffs, however, argue that the statute was tolled by the *Pearson, Jenny* and *Frankel* litigations.

The leading case on the issue of the tolling effect of class actions on statutes of limitations is *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The Supreme Court held in that case that

> at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute *for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.*

414 U.S. at 552–53, 94 S.Ct. at 766 (emphasis added). Even though the Court plainly stated that the statute of limitations was tolled for those purported members of the class who made timely motions to intervene after the denial of the class certification motion, the plaintiffs argue that the tolling rule set forth in *American Pipe* applies to *all* purported members of the class.

The facts of *American Pipe* do not support the plaintiffs' position. There, the State of Utah filed a private antitrust action on behalf of a class of states and other governmental bodies. The complaint was filed eleven days before the expiration of the applicable statute of limitations. The defendants moved for decertification of the class, and seven months after the complaint was filed, the motion was granted. Eight days after the filing of the order decertifying the class, more than 60 putative class members moved to intervene in the action.

---

6. Even if there is a question of fact as to the propriety of measuring the statute of limitations from April 30, 1971, and I do not think such a question of fact could be reasonably raised, the plaintiffs' claims could not be salvaged. The SEC complaint, consent judgments and the events involving ECO generally were reported in numerous articles in The ·Wall Street Journal, The Miami Herald and The New York Times from May 1, 1971 onward. *See* Summit affid., exhs. C, D. In 1971 alone, some 30 newspaper articles appeared concerning ECO and the events in question. *Id.* Hence, construing these circumstances in the very best light possible to the plaintiffs, and giving them all the benefit of the doubt, the very latest point at which they could argue was the first time they should have discovered the alleged fraud is some time in late 1971. In light of my holding below that the statute of limitations was not tolled by the *Pearson, Jenny and Frankel* litigations, the plaintiffs' claims would still be barred even if this later date is used, whether the California or the New York statute of limitations is applied.

These motions were denied by the district court on the ground that the claims of the proposed intervenors were barred by the statute of limitations. The ninth circuit reversed, and the Supreme Court agreed, holding that the statute of limitations had been tolled for those who filed timely motions to intervene.

The second circuit has refused to extend *American Pipe* beyond its facts and has expressly rejected the arguments now being advanced by the plaintiffs. In *Arneil v. Ramsey*, the court refused to find that the relevant statute of limitations had been tolled by the filing of a class action where the parties seeking the toll had not intervened in the class action. The court observed that "the rule of *American Pipe* was intended for the benefit of purported members of the class who sought to *intervene* in the action after class status was denied." 550 F.2d at 783 (emphasis in original). The *Arneil* decision was reaffirmed in *Stull v. Bayard*, 561 F.2d 429, 433 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978), wherein the court held that the

> argument that this [tolling] reprieve should be extended to class members who file separate suits after the class action has been terminated and the statute of limitation has expired is completely without merit.

*Accord, Wachovia Bank & Trust Co. v. National Student Marketing Corp.*, 461 F.Supp. 999, 1012–11 (D.D.C.1978).

■ Since the plaintiffs did not file a motion to intervene in the *Pearson* litigation, they cannot claim that the statute of limitations was tolled by that action. Their time to file suit under the California statute of limitations thus expired long before they filed their complaint herein. Their action is therefore untimely.

■ It would appear that the plaintiffs' claims would be barred even if the six-year New York statute of limitations is applied instead of the California three-year limitations period. As I have already held above, the *Pearson* litigation did not toll the statute of limitations with respect to the plaintiffs' claims. Similarly, the *Jenny v. Frankel* actions could not have tolled the statute of limitations as to the plaintiffs' instant action, even though the plaintiffs have moved to intervene in those actions. The tolling effect, if any, of *Jenny* and *Frankel* would operate only on the statute of limitations applicable to those actions in the Florida district court and only as to those purported members of the class who filed timely motions to intervene in those actions. The plaintiffs may be able to claim the benefit of the *American Pipe* tolling rule for the claims asserted in their intervenors' complaint filed in Florida, if their motions to intervene are timely. They cannot claim the benefit of the tolling rule for their separate suit filed in this Court. The Supreme Court was concerned in *American Pipe* with furthering judicial efficiency and economy. To permit the plaintiffs to maintain the instant suit when they have moved to intervene in the two Florida proceedings and after some 21 similar actions—including 17 purporting to be class actions—have been filed would undermine those very concerns.

The instant suit was not filed until more than eight years after the alleged fraudulent scheme should have been discovered. Accordingly, whether measured by the three-year California statute or the six-year New York statute, the time in which the complaint herein could have been filed expired by the time the complaint was in fact filed. The complaint must therefore be dismissed. If, by this result, the plaintiffs are foreclosed from obtaining relief, they cannot justifiably claim unfairness, for the district court in *Pearson* expressly invited all members of the putative class to intervene in that action. [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,030, at 94,146. As the fifth circuit observed on appeal,

> the motion for class action certification was denied by the district court on March 13, 1973, and the stipulation of settlement was entered into on February 22, 1974; thus, any party who failed to seek intervention in the consolidated action between those two dates can blame no one

but himself if his action is now barred
. . . .
*Pearson v. Ecological Science Corp.*, 522
F.2d at 178.

### CONCLUSION

In accordance with the above, the motion
to dismiss has been converted to a motion
for summary judgment and is hereby grant-
ed.[7] The complaint is dismissed in its en-
tirety. Submit judgment on notice within
10 days after the entry of this decision.

SO ORDERED.

---

7. In view of my ruling on the statute of limitations defense, the Rule 17(a) portion of the motion need not be reached.