Elizabeth MAIDEN, Trustee of the
Pound Ridge Trust, et al.,
Plaintiffs,

v.

Carl BIEHL, et al., Defendants.

No. 74 Civ. 4690(CES).

United States District Court,
S.D. New York.

March 16, 1984.

Anderson, Russel, Kill & Olick, New York City, for plaintiffs IIT & Its Liquidators.

Laszlo Kormendi, New York City, for plaintiff Maiden.

Stillman, Friedman & Shaw, New York City, for defendants Burkley, Carpenter & Moran.

Sullivan & Cromwell, New York City, for defendant Deloitte Haskins & Sells.

Shea & Gould, New York City, for defendant Casey.

Gilbert, Segall & Young, New York City, for defendant Biehl.

James H. and Betty M. Swinney, Joseph S. Zuccaro, pro se.

## MEMORANDUM DECISION.

STEWART, District Judge:

Plaintiffs filed this action on October 24, 1974 to recover damages allegedly incurred in connection with their purchase of Ivanhoe Associates securities in October 1968. Ivanhoe Associates, a now defunct agribusiness, was later named Multiponics, Inc. Plaintiff International Investment Trust ("IIT") sues on its own behalf and on behalf of its fundholders, and the seven class plaintiffs sue in their individual capacities as well as on behalf of all other owners and holders of Multiponics securities. The complaint names four categories of defendants: 1) the organizers and promoters of Multiponics, consisting of Messrs. Biehl, Burkley, Carpenter, Casey, Moran, Orbe, Swinney and Zuccaro; 2) the "Staatscorp" defendants, consisting of entities and individuals who were all connected with the securities brokerage firm of Glove Forgan, William R. Staat, Inc.; 3) Deloitte, Haskins and Sells, the independent auditor for Multiponics; and 4) the officers of IIT, who were in control of the Fund at the time IIT made the Multiponics investment.

The background of the transactions underlying these claims is fully set forth in our previous decisions. *See Maiden v. Biehl,* [1981–1982 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 98,226 at 91,522 (S.D. N.Y. May 19, 1981); ¶ 98,347 at 92,150 (S.D.N.Y. Nov. 6, 1981). Before us now are motions by most of the promoter defendants seeking partial summary judgment dismissing: 1) all claims by plaintiff IIT; 2) all claims by plaintiffs in their representative capacity; and 3) all claims in their individual capacities by any plaintiffs who are not residents of New York. One defendant, Deloitte, Haskins and Sells seeks summary judgment with respect to all claims. Lastly, plaintiffs seek class cer-

tification. We will address each of these motions in turn.

*Background Factual Discussion*

The chronology of certain undisputed events after the sale of the Multiponics securities is relevant to the motions under consideration. The closing of the purchase of the securities took place on October 25, 1968. The first sign of trouble was on October 15, 1970, when First National City Bank ("Citibank"), serving as Indenture Trustee for the Multiponics debenture holders, mailed notice to the holders stating that Multiponics failed to make an interest payment and was unable to continue operations. On October 23, 1970, Citibank notified the holders that Multiponics intended to liquidate. The debenture holders formed a committee on October 28, 1970 to represent them in the Multiponics liquidation proceedings.

In February of 1971, Multiponics filed the petition for reorganization in Louisiana. Sherman & Sterling acted as counsel for Citibank, and Mr. Dineen of the firm kept the debenture holders apprised of the bankruptcy proceedings. The Reorganization Trustee's Report, sent to debenture holders on December 23, 1971, made specific disclosure of two of the facts which plaintiffs assert were misstated or omitted from the offering circular: Multiponics assumption of debt as part of the acquisition price of farming properties and the operating status of the properties. Mr. Dineen wrote to the Reorganization Trustee in February of 1972, specifically comparing discrepancies between the offering circular and the registration statement.

*Background Legal Discussion*

The instant motions for summary judgment are all based on the timeliness of the plaintiffs' claims. While each claim presents different issues, the basic legal framework for the defendants' statutes of limitations defense is the same. The federal securities laws under which most of these claims are brought do not provide for a limitations period.[1] To determine the

---

**1.** The claims brought under Section 12 of the Securities Act of 1933 are time-barred. Section

timeliness of the action, we must refer to the statute of limitations of the forum state, which includes reference to New York's borrowing statute, N.Y.Civ. Prac.Law § 202.[2] *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977). Under the borrowing statute, if the plaintiff is a non-resident of New York and the cause of action accrued outside of the state, New York courts will apply either the limitations period of the state where the action accrued, or the New York statute, whichever is shorter.

Under New York law, plaintiffs' claims would be timely insofar as they were brought within 6 years, the applicable statute of limitations for fraud actions and 10b–5 lawsuits. *Maiden v. Biehl, supra,* ¶ 98,226 at 91,528. For non-New York residents, the critical question for borrowing statute purposes is where the cause of action accrued. Plaintiffs argue that *all* of the claims accrued in New York, making the borrowing statute inapplicable. Our previous decision noted that New York and federal courts were grappling with two different approaches to the question of how to decide where a cause of action accrued for the purposes of the borrowing statute. At that time, the Second Circuit had held that the test for fraud was, "where the economic impact is felt, normally the plaintiff's residence." *Sack v. Low*, 478 F.2d 360, 366 (2d Cir.1973). At the same time, courts were shifting toward another possible analysis, which would be to apply modern choice of law tests. *State Teachers Retirement Board v. Fluor Corp.*, 500 F.Supp. 278 (S.D.N.Y.1980), *modified*, 654 F.2d 843 (2d Cir.1981). That approach to determining where a cause of action accrued would take into account a variety of factors, such as where the stock transactions took place,

the state of incorporation and principal place of business of defendants, and where the fraud occurred. *State Teachers, supra,* 500 F.Supp. at 287. Issues of fact relevant to either analysis precluded summary judgment at that time.

 Since our last decision, the Second Circuit has made it clear that choice of law principles based on grouping of contacts do not apply to borrowing statute analysis. *Industrial Consultants Inc. v. H.S. Equities*, 646 F.2d 746 (2d Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Stafford v. International Harvester Co.*, 668 F.2d 142 (2d Cir.1981). *See also Freschi v. Grand Coal Venture*, 551 F.Supp. 1220 (S.D.N.Y.1982). To determine where a cause of action accrued in a fraud case, the test is not where the misrepresentations were made, or other factors relevant to the fraudulent activity itself, but where "the loss resulting from the misrepresentation was sustained." *Industrial Consultants, supra,* 646 F.2d at 747. While economic impact is usually felt at the place of residence, there is no indication that this is a mechanical test. Where a cause of action accrues still depends on the facts of each case, but the question is always where the plaintiff felt the economic impact of the fraud. *Sack v. Low*, 478 F.2d 360, 368 (2d Cir.1973); *Arneil v. Ramsey*, 550 F.2d 774, 780 (2d Cir.1977).

Plaintiffs' general argument that all of the claims are timely because of the New York events connected with the fraud must therefore fail. Each claim of the non-New York residents must be assessed independently, in terms of the place of accrual and the applicable statute of limitations. We turn to a consideration of each plaintiff's claim in an individual capacity.

---

13 of the Securities Act of 1933, 15 U.S.C. § 77m, provides that claims brought under Section 12 can in no event be brought later than three years from the sale of the securities. Plaintiffs concede that the Section 12 claims are not timely. Therefore, defendants are granted summary judgment on the first and seventh causes of action in the second amended complaint.

**2.** The borrowing statute, N.Y.C.P.L.R. § 202 (McKinney), provides in full:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

*Plaintiffs in Their Individual Capacities*

*Shareholders Associates and Shareholders Capital Corporation*[3]

On October 28, 1968, Roger Bensen, a Connecticut resident, signed a Purchase Agreement for 8,500 units of Ivanhoe as attorney in fact for "Shareholders Associates, a California partnership." On that date, "it was contemplated that the purchaser would be an investment partnership to be formed under the name of Shareholders Associates," Aff. of Roger Bensen, ¶ 4, but no such partnership in fact existed. On October 30, 1968, a corporation, Shareholders Associates, Inc. ("Shareholders Associates"), was incorporated in Delaware. Bensen was elected to its three-member Board of Directors. The principal place of business of Shareholders Associates from November 1, 1968 through at least June 29, 1969 was in New York City.

On November 1, 1968, the Board of Shareholders Associates passed a resolution providing:

> the corporation ratif[ied] and adopt[ed] as its own the Purchase Agreement dated October 25, 1968 for the acquisition of $850,000.00 principal amount of 7½% subordinated debentures due October 1, 1983, 59,500 shares of common stock and stock purchase warrants for the purchase of 68,000 shares of common stock
>
> . . .

Shareholders Associates paid the $850,000.00 to Ivanhoe on November 20, 1968.

Plaintiff argues that the timeliness of its action is to be judged by the six year period provided in N.Y.Civ.Prac.Law § 213(8), measured from November 20, 1968, the time of payment. Asserting that it is a resident of New York and that its claim arose in this state, plaintiff argues that New York's borrowing statute is inapplicable.

■ To determine whether the borrowing statute applies, we must determine the place where the claim sued upon *originally*

accrued. *United States Fidelity and Guaranty Co. v. E.W. Smith Co.,* 46 N.Y.2d 498, 387 N.E.2d 604, 607, 414 N.Y. S.2d 672, 675 (1979). "If a cause of action accrues to a non-resident who later assigns the claim to a New York resident, the borrowing statute will apply." *Gluck v. Amicor, Inc.,* 487 F.Supp. 608, 612 (S.D.N.Y. 1980) (quoting McLaughlin's Practice Commentary (202:3 (1979) at N.Y.Civ.Prac. Law § 202 (McKinney Supp.1979–80)).

■ In this case we find the cause of action concerning the purchase of 850,000 units of Ivanhoe under the Purchase Agreement signed October 25, 1968 originally accrued on that date in Connecticut in favor of Roger Bensen. When Bensen signed the Purchase Agreement on behalf of a non-existent principal, ("Shareholders Associates, a California partnership"), he became personally liable under that Agreement. *Imero Fiorentino Associates, Inc. v. Green,* 85 A.D.2d 419, 447 N.Y.S.2d 942, 943 (1982). If Bensen was induced by fraud to enter into that contract, a right to sue accrued on that date. *Maiden v. Biehl,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,226 at 91,529 (S.D.N.Y. May 19, 1981). *See also Gilman Brother, Inc. v. Peat, Marwick, Mitchell & Co.,* 486 F.Supp. 785, 787 (S.D.N.Y.1980); *Rice v. Baron,* 456 F.Supp. 1361, 1368 (S.D.N.Y. 1978). Given Bensen's Connecticut residency, with no facts indicating that he would have personally suffered the loss elsewhere, his claim accrued in that state. *Sack v. Low,* 478 F.2d 360, 365–66 (2d Cir.1973). Accordingly, we conclude that the cause of action upon which Shareholders Associates seeks to sue originally accrued in Connecticut in favor of a non-resident of New York.

The relevant Connecticut limitations period is two years. While there have been intimations that Connecticut's general fraud statute could be the one applicable to 10b–5 actions, *see Bache Halsey Stuart Inc. v. Namm,* 446 F.Supp. 692, 697 (S.D.N.

---

**3.** Shareholders Capital Corporation was the sole shareholder of Shareholders Associates, Inc., which assigned and transferred the interest in

the Multiponics securities in December of 1973. They sue as co-plaintiffs to avoid any questions as to which is the real party in interest.

Y.1978) (three years under Conn.Gen.Stat. § 52–577 (1975)), the weight of authority holds that the two year statute of limitations of Conn.Gen.Stat. § 36–346(e) is applicable.[4] *Hitchcock v. deBruyne*, 377 F.Supp. 1403 (D.Conn.1974); *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1125 (6th Cir. 1982); *Dandorph v. Fahnestock & Co.*, 462 F.Supp. 961, 983 (D.Conn.1979).

▇▇▇ While Connecticut law determines the length of the statute of limitations, federal law determines when the period begins to run. *Arneil v. Ramsey*, 550 F.2d 774, 780 (2d Cir.1977) (citing *Moviecolor Limited v. Eastman Kodak Company*, 288 F.2d 80, 83 (2d Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961)). The starting point is "not the time at which a plaintiff becomes aware of all the various aspects of the alleged fraud, but ... the time at which plaintiff should have discovered the general fraudulent scheme." *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir.1975). *See also Stull v. Bayard*, 561 F.2d 429 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774, 780–781 (2d Cir.1977). It is clear that by October of 1972, plaintiffs should have known of the fraud, since by December of 1971, the Reorganization Trustee's Report had been issued, which fully disclosed the misstatements and omissions at issue. Under the Connecticut statute, Shareholders Associates claim is not timely.

## IIT

▇▇▇ IIT is an International Investment Trust, organized under the laws of the Grand Duchy of Luxembourg with its principal place of business in Switzerland. IIT's cause of action accrued wherever the loss resulting from the misrepresentations was sustained. *Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 747 (2d Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Sack v. Low*, 478 F.2d 360, 365 (2d Cir.1973); *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977). Courts have described IIT as an open-ended mutual fund or a business trust. *See IIT v. Vencap*, 519 F.2d 1001, 1003 n. 1 (2d Cir. 1975); *IIT v. Cornfeld*, 619 F.2d 909, 913 n. 4 (2d Cir.1980). For the purposes of the borrowing statute, the place of injury for a mutual fund is the principal place of business of the fund, and not the residence of the fundholders. *Korn v. Merrill*, 403 F.Supp. 377, 385–86 (S.D.N.Y.), *aff'd*, 538 F.2d 310 (2d Cir.1976). Using Judge Medina's language of *Arneil v. Ramsey*, *supra*, 550 F.2d at 780, to the extent IIT became a poorer mutual fund as a result of the Multiponics investment, it became a poorer mutual fund in Switzerland.

▇▇▇ A preliminary question, seriously relevant only to IIT's claims, is whether *Stafford v. International Harvester Co.*, 668 F.2d 142 (2d Cir.1981) makes the borrowing statute totally inapplicable.[5] *Stafford* considered "whether a New York court would hold that a cause of action accrues (for the purposes of applying its borrowing statute) in a jurisdiction which could not exercise jurisdiction over it." *Stafford*, 668 F.2d at 150. *Stafford* itself was a diversity case and, although the cause of action accrued in Pennsylvania, one of the defendants would not have been able to have been sued there because of lack of personal jurisdiction. The Court concluded: "We believe that New York's borrowing statute would be read as applying only to statutes of limitations of states 'where suit could have been brought' in order to effectuate the purpose which the

---

4. Conn.Gen.Stat. § 36–346(e), now repealed, would still govern this case as it was effective from July 1, 1967 to October 1, 1977. In Connecticut, the statute of limitations in effect at the time of filing controls. *Dandorph v. Fahnestock & Co.*, 462 F.Supp. 961, 963 (D.Conn.1979) (citing *Bohun v. Kinasz*, 124 Conn. 543, 547, 200 A. 1015 (1938). The successor statute, Conn. Gen.Stat. § 36–498 retains the two year period.

5. *Stafford* does not affect the claims of American plaintiffs, insofar as the applicable securities laws provide for nationwide personal jurisdiction. *See Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974).

statute was designed to serve." *Id.*, 668 F.2d at 151.

With respect to the effect of *Stafford* on IIT's claims, two Swiss statutes are offered by the parties as applicable to the question of jurisdiction: Articles 57(1)(c) and 57(2) of the Court Constitution Law (Loi Sur L'Organisation Judiciaire) of the Canton of Geneva. We decide that under Article 57(2) a Geneva court would have exercised jurisdiction over all the defendants.[6] Pursuant to that Article, a Geneva court would decide whether to exercise personal jurisdiction over these defendants by looking to the jurisdictional law of the non-resident defendant's domicile. According to the experts, the Geneva court would exercise jurisdiction over the defendants in this case if a United States court would exercise jurisdiction over similar Swiss defendants—a comparable Geneva accounting firm, or a Geneva individual—under the circumstances alleged in the Second Amended complaint.

While the parties go into intricate detail with respect to the state law of each defendant's domicile, we find that there would be personal jurisdiction over these defendants in any federal court pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa. Under that section of the Act, personal jurisdiction extends "to the full reach permitted by the due process clause." *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1339 (2d Cir.1972); *Securities and Exchange Commission v. Gilbert*, 82 F.R.D. 723, 725 (S.D.N.Y.1979). However, because personal jurisdiction in the securities laws is national in scope, these hypothetical Swiss defendants must have had the minimum contacts with the relevant forum required of *International Shoe.* Our specific focus is: 1) whether the defendants committed some act which shows that they purposely availed themselves of the privilege of conducting activities and invoking the benefits of the forum state; and 2) whether defendants' contacts with the forum are such so as to make it reasonable to require them to defend the particular suit there. *Securities and Exchange Commission v. Gilbert*, 82 F.R.D. 723 (S.D.N.Y. 1979) (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

The analogous Swiss defendants must only have had the minimal contacts with the *United States*, not with the state of domicile of each defendant. *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972). Since many acts connected with the alleged securities fraud occurred in the United States, and each defendant allegedly participated in fraudulent activities in this country, if every defendant in the case were Swiss rather than American, those contacts would easily satisfy due process requirements. In conclusion, because hypothetical Swiss defendants would have been subject to the jurisdiction of American courts, a Swiss court would exercise jurisdiction over these defendants in Geneva.

Since *Stafford* does not preclude the application of the borrowing statute, the next question is which Swiss statute should be "borrowed." In evaluating the alternative statutes, we remain mindful of guidelines that have been used in evaluat-

---

6. Article 57 provides as follows:
(1) In civil matters and under reservations of rights in the federal constitution, in the federal laws and in international treaties, the courts of the canton [of Geneva] have jurisdiction of the following cases:

\* \* \* \* \* \*

(c) in suits against foreigners, even non-residents of the canton, arising from obligations which they have entered into [in Geneva] with respect to persons domiciled in the canton.

(2) In all other cases, one follows, as regards foreigners not domiciled or residing in the canton, the same jurisdictional rules which are observed in their countries regarding residents of Geneva.

The parties' experts directly contradict each other on the applicability of Article 57(1)(c) to a tort action, so we rely on 57(2).

ing which *state* statute to apply or to borrow:

> The most important consideration in picking a state statute of limitations to apply to rule 10b–5 actions is to compare the state causes of action to a rule 10b–5 action and to choose the statute of limitations applicable to that state cause of action which is most similar to the federal cause of action under rule 10b–5 and which best effectuates the rule's purpose. *Berry Petroleum Company v. Adams & Peck*, 518 F.2d 402, 407 (2d Cir.1975).

In a substantive sense, Article 752 of the Swiss Code of Obligations is the most analogous provision: it clearly is the Swiss equivalent of our securities fraud laws.[7] Article 760 is the applicable limitations period for Article 752 cases: it provides for five years from the date of discovery of the fraud, or at the most ten years.[8]

Defendants object to this particular provision on a number of grounds, none of which we find persuasive. They argue that Article 752 only applies to Swiss corporations, so that Multiponics could never have been sued under that statute. Their experts also assert that the Article only applies to the issue of shares and bonds and not their sale. These objections, while perhaps true as a matter of Swiss law, are not

dispositive. We have already determined that a Swiss court would have personal jurisdiction over these defendants; presumably, if IIT chose to sue there, the Swiss court would apply our federal laws. The question is which statute of limitations a Swiss court would apply to fill the gap in our securities laws, not what specific provision of Swiss law would give IIT a cause of action, and would substantively govern the behavior of the defendants.

Moreover, the alternative offered by the defendants is unworkable, and leads to absurd results. Article 41 provides in general terms that "whoever unlawfully causes damage to another, whether willfully or negligently, shall be liable for damages."[9] Article 60 sets out a one year limitations period for those actions, unless the behavior is also prosecutable criminally, in which case the statute for civil actions is ten years.[10] Since the allegations in the complaint could amount to criminal behavior, the ten year provision would be applicable. To avoid that result, defendants' experts state that only natural persons can be criminally liable. Taking this step by step, if we were to try to find the exact Swiss cause of action, with its relevant statute of limitations, which could actually be brought against each defendant in Switzerland, we

---

**7.** Article 752 as translated by the plaintiffs' expert, provides:

> If, on the occasion of the formation of a company, or of the issuance of shares or bonds, there have been made or divulged statements in a prospectus (Arts. 631, 651), or in circulars, or similar notifications, which are incorrect or do not comply with the legal requirements, anyone who has cooperated intentionally or negligently in this connection will be liable to the individual stockholders or bondholders for damage caused thereby.

**8.** Article 760 reads as follows:

> The claim for damages against persons responsible according to the above provisions is barred after five years from the day on which the aggrieved party has received knowledge of the damage and of the person responsible, but in no case later than ten years from the day of the damaging action.
>
> If the claim is based on a criminal action for which the criminal law provides a longer limitation, this is valid for the civil claim as well.

**9.** Article 41, Swiss Code of Obligations, states:

> Whoever unlawfully causes damage to another, whether willfully or negligently, shall be liable for damages. Equally liable for damages is any person who willfully causes damage to another in violation of nonae mores.

**10.** Article 60, Swiss Code of Obligations, states, in pertinent part:

> The claim for damages or reparations is barred by the statute of limitations (Article 127 et seq.) after one year from the date when the damaged person has received knowledge of the damage and of the identity of the person who is liable, but, in any event, after ten years from the date when the act causing the damage took place.
>
> If the claim results from an act which is illegal under criminal law, however, and which, in accordance with criminal law is subject to a longer period of limitation by statute, then the latter period of limitation shall also apply to the civil claim.

would find IIT's cause of action timely as to some defendants, and untimely as to others. On the facts of this case, where the only Swiss connection with the lawsuit is the residency of the plaintiff, and the complaint alleges securities fraud in the United States by American defendants, that type of fractionalizing of a cause of action is absurd. We further find the one year Article to be an inappropriate statute to apply insofar as it is a shorter limitations period than all statutes encountered in our research. In a case of first impression as to which Swiss period to apply, that option would be inconsistent with the "broad remedial policies of the federal securities laws," which " 'are best served by a longer, not shorter statute of limitations.' " *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 409 (2d Cir.1975) (quoting *United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973)).

In sum we find the Swiss securities provision applicable. While state, or in this case, Swiss law controls as to the length of the period, federal law determines when the period begins to run. See discussion, *supra*, p. 1214. As noted above, the very first sign of trouble was in October of 1970, and the lawsuit was filed on October 24, 1974. IIT's claim is timely.

*The Pound Ridge Trust*

Plaintiff Elizabeth Maiden, a resident of New York, is the Trustee of the Pound Ridge Trust. Her predecessor, Thomas Hugh Byrd, was the Trustee at the time of the purchase of the Ivanhoe securities. While Mr. Byrd was a New Jersey resident, he conducted all his business activities, including the performance of his duties as Trustee, in New York. The Trust was created in New York, with a New York settlor. While the Trust originally had a New York trustee and New York beneficiaries, at the time of the purchase, all four of the beneficiaries lived in Connecticut.

The Trust instrument states that the Trust is to be construed according to New York law. Lastly, the Trust files New York State and City tax returns.

Defendants argue for the applicability of either New Jersey or Connecticut law under the borrowing statute, either of which could bar the action. We need not reach the question of whether current New Jersey law has a two or a three year limitations period insofar as we decide that the cause of action accrued within New York.

▪ Initially, we agree with defendants' argument that the New York residency of plaintiff Maiden is not relevant to the question of the applicability of the borrowing statute. Ms. Maiden was not the trustee at the time the cause of action accrued. *Gluck v. Amicor*, 487 F.Supp. 608, 612 (S.D.N.Y.1980). However, the New Jersey residency of the Trustee at that time is also not dispositive, since New Jersey is not where the economic impact of the fraud was felt. *Sack v. Low*, 478 F.2d 360, 366 (2d Cir.1973).

As previously outlined, usually the place where the economic loss of a fraud would be felt is the plaintiff's residence: no cases hold that the residency of the plaintiff always determines where a cause of action accrued. Where the plaintiff is a trust, the use of the residency of the trustee as the sole factor to determine the place of accrual does not make sense as a practical matter, and is not required legally.

▪ While the residence of a trustee determines the residence of a trust for the purpose of determining whether diversity jurisdiction exists, *Navarro Savings Association v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), in the context of the borrowing statute, residency is merely a shorthand method to decide where economic impact is felt.[11] Defendants argue that because a trustee can be subject to a surcharge for failure to pursue claims on behalf of the trust, it is the trustee who

---

11. *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220 (S.D.N.Y.1982) is not to the contrary. Judge Sweet did not make any specific rules

with respect to where trusts suffer injury, but also analyzed all the facts of that case, taking into account the same factors we have.

**1218**

suffers an economic loss. The nature of a trustee's liability for investment decisions on behalf of a trust, and whether a claim for securities fraud is the type of claim that would subject a trustee to a surcharge are highly speculative issues. Defendants' focus on the internal workings of trusts also misses the thrust of the inquiry—who became poorer, and where did they become poorer, as a result of the investment in Multiponics securities. *See Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977).

Defendants' alternative analysis that the residence of the beneficiaries is the situs of the loss has appeal because these are the individuals who lost money. While all four beneficiaries are currently Connecticut residents, they used to live in New York. It would appear to be pure happenstance that all the beneficiaries now live in the same state. If the beneficiaries were scattered, it would be unworkable to fractionalize one claim because some parts were time-barred.

■ We are persuaded that it is the Trust itself that suffered the loss, and the loss was felt in New York. While a trust is not a distinct legal entity like a corporation, it is a set of legal relationships with respect to property. I Scott on Trusts, § 2.3 at 38 (3rd Ed.1967). The corpus of the Trust diminished as a result of the investment in this case. From all the facts presented on this motion, it is clear that the Trust is located in New York. New York is where taxes are paid, where its investment decisions are made, and where the securities are physically kept. For the purpose of determining the applicability of the borrowing statute, New York is where the cause of action accrued. Since the borrowing statute is not applicable, New York's six year limitations period applies, and plaintiff Maiden's claim on behalf of the Pound Ridge Trust is timely.

*Massachusetts Plaintiffs*

■ The three class plaintiffs from Massachusetts are Karl E. Schlacter, Marion P. Schlacter and Worcester County National Bank. Bay Colony Management

Corp., also a Massachusetts resident, acted as agent and nominee for these purchasers and presented an uncertified check at the closing on October 25, 1968. The securities were placed in escrow at the closing and released on October 31, 1968 after the check cleared. Subsequently, Bay Colony requested the reregistration of the units held in its name to other parties, including Worcester County National Bank (900 units) and the Schlacters, as joint tenants with rights of survivorship (10 units).

There is no dispute with respect to the Massachusetts residency of either Bay Colony or the plaintiffs. We have already rejected plaintiffs' general argument that the borrowing statute is entirely inapplicable to the non-New York residents on the basis of a grouping of contacts analysis. *See* p. 1212, *supra.* Plaintiffs made no argument indicating that these particular individuals or the Bank felt the economic loss of their investment somewhere other than their residences. *Sack v. Low,* 478 F.2d 360, 366 (2d Cir.1973). Therefore, we look to Massachusetts law, which has a two year limitations period for claims arising on or before January 1, 1974. *Cook v. Avien,* 573 F.2d 685, 694 (1st Cir.1978); *Sleeper v. Kidder Peabody,* 480 F.Supp. 1264, 1265 (D.Mass.1979), *aff'd,* 627 F.2d 1088 (1st Cir. 1980). Applying federal law, and starting the limitations period at the time at which it is indisputable that there was actual knowledge of the fraud, in February of 1972, the claims of the Massachusetts plaintiffs, in their individual capacities are clearly time-barred.

*Deloitte Haskins and Sells—Separate Motion for Summary Judgment*

■ Deloitte Haskins and Sells moves separately for summary judgment on all the plaintiffs' claims, including the New York residents. The facts pertinent to their unique statute of limitations defense are as follows. The original complaint was filed on October 24, 1974 and named Multiponics auditors as a John Doe defendant. Twenty days later, on November 14, 1974, plaintiffs filed an amended complaint nam-

ing Deloitte, Haskins and Sells[12] specifically as the auditor defendant and promptly served them with process. The amended complaint alleged that Deloitte Haskins and Sells was Multiponics "public accounting firm," which approved the contents of the offering circular, participated in its preparation and also participated in the solicitation of plaintiffs' purchases of Multiponics securities.

Plaintiffs must satisfy the requirements of Fed.R.Civ.P. 15(c) to determine whether their amended complaint can relate back to the date of the original pleading. The first requirement of the rule is that the amended claim must arise out of the same transaction or occurrence set forth in the original pleading: this requirement is obviously met. Whether a John Doe complaint should be treated as a misnomer or otherwise is irrelevant, since the Second Circuit has held that all amendments affecting the designation of parties must satisfy the criteria of Rule 15(c). *Ingram v. Kumar*, 585 F.2d 566, 570 (2d Cir.1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979).

Defendant was properly named and served within twenty days of the running of the statute of limitations. The Second Circuit has explicitly held that "the period within which 'the party to be brought in' must receive notice of the action includes the reasonable time allowed under the federal rules for service of process." *Ingram v. Kumar, id.*, 585 F.2d at 572. Twenty days after the statute of limitations has expired is well within the reasonable limits accepted by other courts. *Calabretta v. National Airlines*, 528 F.Supp. 32 (S.D.N.Y.1981) (2–3 weeks); *Davis v. Krauss*, 478 F.Supp. 823 (E.D.N.Y.1979) (2 months reasonable). Defendants have also not shown any serious prejudice as a result of the failure to name them specifically twenty days earlier. Lastly, with respect to the knowledge requirement of Fed.R.Civ.P. 15(c), defendant argues that they had no

knowledge of this litigation until the amended complaint was filed against them. The language of the rule does not require actual knowledge for an amendment to relate back: the question is whether the party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Fed.R.Civ.P. 15(c)(2). Whether Deloitte Haskins and Sells "should have known that they were included in the complaint" is an issue for trial, since it involves a disputed question material to the motion. Plaintiffs note that Deloitte Haskins and Sells was participating in the Louisiana bankruptcy proceedings, and that it is disingenuous for defendant to argue that they had no idea about the litigation. Drawing all reasonable inferences favorable to the plaintiff, the defendant has not met their burden of showing an absence of issues for trial. *See generally Cali v. Eastern Airlines, Inc.*, 442 F.2d 65 (2d Cir.1971).

*Class Action Certification*

Plaintiffs also move for class certification. For the following reasons, this motion is denied.

First, plaintiffs fail to meet the third prerequisite to a class action as set forth in Rule 23(a) Fed.R.Civ.P.—that the class be "so numerous that joinder of all members is impracticable." By their own account, resolving all relevant disputed issues of law in favor of the plaintiffs, the putative class numbers 37. By granting partial summary judgment with respect to some of the plaintiffs' claims in this decision, the class is reduced to a total of 33 members. Moreover, based on the residencies of other members of the class, it would appear that the 5 absent class members from Massachusetts would also be time-barred, unless plaintiffs produce some evidence that those class members suffered the economic impact of the fraud someplace other than their residences. This leaves us with a total of 28 class members,

12. Deloitte Haskins and Sells changed its name from "Haskins & Sells" in May of 1978. It was actually sued under its old name in this action.

some of whose claims could very well be time-barred, insofar as they reside in states other than New York whose applicable limitations period could be shorter.

■■■ While there is no magic number that makes a class appropriate or inappropriate, Rule 23(a)'s numerosity requirement is a prerequisite to the maintenance of a class action. Plaintiff has the burden of proving that joinder would be impracticable because of the number of class members. *Demarco v Edens*, 390 F.2d 836, 845 (2d Cir.1968). Beyond stating that because absent class members are from a variety of states, and therefore not subject to *compulsory* joinder, plaintiff makes no other argument as to why joinder is impracticable. To date, geographic diversity has not prevented purchasers of Multiponics securities from getting together. Five of the present plaintiffs joined the lawsuit after the initial complaint was filed, which indicates that joinder is practicable, rather than impracticable.

Even were we to find that plaintiffs met their burden on the numerosity requirement, and could satisfy the prerequisites of Rule 23, certification of a class is not warranted. We are not persuaded that the common issues predominate over the individual issues, which include the issues of reliance and timeliness. We recognize that the Second Circuit has stated that individual issues of reliance should not always bar class certification. The result obviously would be to "negate any attempted class action under Rule 10b–5." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). But we have already held that the question of reliance on specific misrepresentations in the offering circular will not be presumed. *See Maiden v. Biehl*, [1981–1982 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 98,347 at 92,150, 92,-152–92,153 (S.D.N.Y. Nov. 10, 1981). This lawsuit involves a private placement to a relatively small number of investors. While the parties dispute whether oral misrepresentations were made, any questions with respect to oral misrepresentations would individualize the questions of reliance to an even greater extent. The indi-

vidual nature of the timeliness issue should be apparent.

Plaintiffs have not met their burden with respect to the prerequisites for a class action, nor have they made any showing as to why a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Relatively few in number, with sizeable individual claims, absent class members are free, and have been free for the 10 year pendency of this lawsuit, to intervene.

CONCLUSION

Defendants are granted their motion for partial summary judgment with respect to the claims of Shareholders Associates, Shareholders Capital Corporation, Karl E. Schlacter, Marion P. Schlacter and Worcester County National Bank. Deloitte, Haskins and Sells is granted partial summary judgment to the same extent as the promoter defendants, but is denied its separate motion for summary judgment. Insofar as the partial summary judgment motion disposes of the federal claims of the plaintiffs, we decline to exercise pendent jurisdiction over their state claims: the cases brought by the above mentioned plaintiffs are dismissed. Lastly, the plaintiffs' motion for class certification is denied.

SO ORDERED.